## PEOPLE *v*. GADSON.

1. CRIMINAL LAW—EVIDENCE—REASONABLE DOUBT OF GUILT.
   A verdict in a criminal case cannot properly rest on a mere preponderance of the evidence, but should be based on proof that leaves no reasonable doubt of guilt.

2. SAME—BURDEN OF PROOF.
   The people must prove every element of the crime charged by direct or circumstantial evidence beyond a reasonable doubt.

3. LARCENY—STEALING FROM THE PERSON.
   An essential element of the crime of larceny from the person is that it be accomplished by "stealing from the person of another" (CL 1948, § 750.357).

4. SAME—EVIDENCE.
   Evidence presented in prosecution of defendant woman for larceny from the person of another *held*, insufficient to prove that she took money from the pocket of complaining witness as claimed by him (CL 1948, § 750.357).

REFERENCES FOR POINTS IN HEADNOTES
[1] 20 Am Jur, Evidence § 1256.
[2] 20 Am Jur, Evidence § 1258.
[3] 32 Am Jur, Larceny § 44.

Appeal from Genesee; Gadola (Paul V.), J. Submitted January 17, 1957. (Docket No. 85, Calendar No. 46,880.) Decided May 17, 1957.

Betty Jane Gadson was convicted of larceny from the person of another. Reversed.

*Thomas M. Kavanagh,* Attorney General, *Edmund E. Shepherd,* Solicitor General, *Jerome F. O'Rourke,* Prosecuting Attorney, and *Edward P. Joseph,* Assistant Prosecuting Attorney, for the people.

*Leitson & Dean* and *Richard C. Fruit,* for defendant.

Dethmers, C. J. A jury found defendant guilty of larceny from the person of another. She appeals.

The complaining witness testified: that on the evening in question he had $146 folded up in his pocket when he entered a tavern; that while there he drank 3 shots of whiskey and met defendant; that he accompanied her in an automobile driven by her, stopped and bought some beer, of which he drank 1 bottle, and then drove to an industrial plant where they picked up a man who was defendant's friend; that the three stopped at a bar to drink whiskey and he had 1 shot; that they stopped to buy gasoline, for which he paid by giving defendant a $10 bill, from which he received no change; that he had also pulled his money out of his pocket on at least 2 other occasions when he had paid for whiskey or beer; that they drove on from the gasoline station and stopped again while defendant went to buy a pint of whiskey; that after midnight the three went to the house where defendant lived; that another woman was already there; that they went into the kitchen and poured a round of whiskey and he drank one; that he felt dizzy and the other woman

escorted him to a bedroom where he lay down; that a few minutes later defendant entered the bedroom and proposed sexual intercourse, which he declined; that he then started to get up and she pushed him back down on the bed and wrestled with him; that she pulled his pants down to his knees, but did not take them off all the way (on cross-examination he revised the latter statement and admitted that on preliminary examination he had testified that defendant had removed his pants completely and got about 4 feet away from the bed with them before he jumped up and grabbed them back, to which version he then adhered); that all the while he was wide awake and knew what was going on, but that he did not see nor feel defendant put her hand in his pocket or remove the money; that he had a little over $138 when he entered the bedroom but only 65 cents when he left; that when he got up from the bed he looked over the bed and on the floor to see if his money was lying there and that when defendant said she did not have it he "looked in the room to see if it fell."

Defendant stresses complaining witness's extensive drinking of intoxicants and dizziness that evening, his removal of his money from his pocket on several occasions before reaching her house, his miscalculation with respect thereto in that if he had $146 when he entered the tavern he could not, after paying for drinks and giving her $10 at the gasoline station, have had "a little over $138" when he entered the bedroom as he testified, also his conflicting testimony as to the extent his trousers were removed, his testimony that he was at all times wide awake and aware of happenings but neither saw nor felt defendant take the money from his person and that, because he apparently thought it might have fallen from his pocket, he looked around on the bed, floor and room for it. Defendant urges that under

such state of the record the people have not established beyond a reasonable doubt that the complaining witness's money was stolen, not merely lost, and that, if the theft were considered established, the people failed to prove beyond a reasonable doubt that it was a larceny from the person and not merely a surreptitious taking of money which, during the alleged wrestling episode, may have fallen from his pocket to the bed or floor.

A verdict of guilty in a criminal case cannot properly rest on a mere preponderance of the evidence, but should be based on proof that leaves no reasonable doubt of guilt. *People* v. *Sligh,* 48 Mich 54; *People* v. *Mayrand,* 300 Mich 225; *People* v. *Franczyk,* 315 Mich 384. The people must prove every element of the crime charged by direct or circumstantial evidence beyond a reasonable doubt. *People* v. *Bagwell,* 295 Mich 412. Under the statute, CL 1948, § 750.357 (Stat Ann § 28.589), an essential element of the larceny charged in the instant case, and one which the people must prove beyond a reasonable doubt, is that it was accomplished by "stealing from the person of another." We think the proofs insufficient to prove that element beyond a reasonable doubt.

Reversed, without a new trial.

Sharpe, Smith, Edwards, Voelker, Kelly, Carr, and Black, JJ., concurred.