## PEOPLE v. GOULD

### OPINION OF THE COURT

1. CRIMINAL LAW—ACCESSORIES—PRINCIPAL—STATUTE.

    The distinction between accessories before the fact and the principals who actually commit a crime has been abolished by statute so that one who counsels, aids, or abets in the commission of an offense may be prosecuted, tried, and convicted as if he had directly committed such offense (CL 1948, § 767-.39).

2. SAME—INFORMATION—TRIAL—PROCEDURE.

    A court determining the guilt or innocence of a person accused of a crime must confine itself to a consideration of the facts contained in the information for that case.

3. SAME—LARCENY FROM THE PERSON.

    It is necessary in order to sustain a conviction for larceny from the person that the property in question actually be taken from the person of another (CL 1948, § 750.357).

4. SAME—ROBBERY ARMED—LARCENY FROM THE PERSON—INCLUDED OFFENSE—CHARGE TO JURY.

    Statement by trial court in its charge to jury that larceny from the person, of which defendant was eventually convicted, was an included offense in the charged offense of armed robbery *held*, reversible error, where the information charging armed robbery stated only that money was taken from a cash register and there was no evidence that any property was taken from anyone's person (CL 1948, §§ 750.357, 750.529).

---

### REFERENCES FOR POINTS IN HEADNOTES

[1] 21 Am Jur 2d, Criminal Law § 124 *et seq.*
[2] 41 Am Jur 2d, Indictments and Informations §§ 260–276.
[3] 32 Am Jur, Larceny § 22.
[4] 32 Am Jur, Larceny §§ 153, 154.
[5] 5 Am Jur 2d, Appeal and Error § 545.

5. CRIMINAL LAW—APPEAL AND ERROR—SAVING QUESTIONS FOR RE-
    VIEW.

> *Failure of person convicted of a crime to raise questions at his
> trial should preclude an appellate court from considering those
> questions later.*

Appeal from Recorder's Court of Detroit, Krause
(Paul E.), J. Submitted Division 1 June 6, 1967, at
Detroit. (Docket No. 1,867.) Decided December 23,
1968. Leave to appeal granted August 18, 1969.
See 382 Mich 774.

Walter C. Gould was convicted of larceny from
the person and carrying a concealed weapon. De-
fendant appeals. Reversed.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *William L. Cahalan,*
Prosecuting Attorney, *Samuel J. Torina,* Chief Ap-
pellate Lawyer, and *Thomas P. Smith,* Assistant
Prosecuting Attorney, for the people.

*J. Leonard Hyman (Stanley Weingarden,* of coun-
sel), for defendant on appeal.

J. H. GILLIS, P. J. Defendant and 2 codefendants
were charged on 2 counts with armed robbery[1] and
carrying concealed weapons.[2] All 3 were convicted
by a jury on the second count but on the first count
one codefendant was convicted of armed robbery,
the other was convicted of simple assault and de-
fendant was convicted of larceny from the person.[3]

---

[1] CLS 1961, § 750.529 (Stat Ann 1968 Cum Supp § 28.797).
[2] CL 1948, § 750.227 (Stat Ann 1962 Rev § 28.424).
[3] CL 1948, § 750.357 (Stat Ann 1954 Rev § 28.589).

The complainant testified that shortly after midnight on May 11, 1965, 2 men entered the restaurant where she was working as a waitress. One of the men had a gun in his hand. After announcing a holdup, the 2 men forced the waitress and her sole customer to lie face down on the floor of another room and proceeded to take about $77 from the cash register and a cigar box and $7 from the wallet of the customer. The men then ran from the restaurant. Another patron, who was entering the restaurant just as the 2 men were fleeing, testified that the men ran to an automobile where a third man was waiting. He could not, however, identify any of the defendants except as to the clothing of one and the color of both.

The waitress was able to identify one of the codefendants as the man with the gun but was unable to identify his accomplice. The customer who had been in the restaurant corroborated the testimony of the waitress as to the details of the robbery and also identified the man with the gun.

The police were called and given the details of the robbery, including a description of the men and the car in which they escaped. This information was immediately communicated by police radio to a Detroit police cruiser. Approximately 10 minutes after the robbery, the officers in the police cruiser observed the 3 codefendants in their car and, based on the broadcast information, arrested them. A search of the car uncovered a fully loaded .45 caliber automatic pistol, 2 pairs of brown cloth gloves under the front seat, $40 in bills and $17.50 in change in the glove box. Forty dollars in bills were found in the pocket of one of the codefendants.

On appeal defendant contends that the verdicts as to each codefendant were inconsistent, that the first and second counts could not be joined under

the facts of this case in one information, that there was insufficient evidence to convict this defendant of the second count and that the crime of larceny from the person was not established as against any of the codefendants. Defendant urges that since he was alleged to have been the driver of the automobile, he could only be convicted on the basis that he aided and abetted in the commission of the armed robbery by his codefendants who were convicted of different offenses.

The distinction between accessories before the fact and principals has been abrogated by statute so that one who counsels, aids or abets in the commission of an offense may be prosecuted, tried and convicted as if he had directly committed such offense.[4] If either of the codefendants could have been convicted of the offense of larceny from a person, then, under the facts of this case, defendant's conviction should be upheld.

While there is testimony that money was taken from the wallet of the customer[5] who was in the restaurant at the time of the holdup, the criminal information on which defendant was tried alleges only the taking of the money from the cash register and cigar box in the presence of the waitress. Because we must confine ourselves to a consideration only of the facts alleged in the information, the only question for our determination is whether the taking of the money from the cash register and cigar box constituted larceny from the person.

CL 1948, § 750.357 (Stat Ann 1954 Rev § 28.589) provides as follows:

"Any person who shall commit the offense of larceny by stealing *from the person of another* shall be

[4] CL 1948, § 767.39 (Stat Ann 1954 Rev § 28.979).
[5] Defendant apparently has not as yet been charged with the armed robbery of the customer.

guilty of a felony, punishable by imprisonment in the state prison not more than 10 years." (Emphasis supplied.)

There is disagreement as to the proper interpretation to be given the italicized portion of the statute.

The following passage appears in 52A CJS, Larceny, § 11, pp 433, 434:

"In order to constitute larceny from the person, the thing stolen must be taken from the actual person of the owner, or at least from his possession and immediate presence, or from a place where he has been compelled by violence or threats to drop or place it.

*        *        *

"Thus it has been held that it is not larceny from the person merely to steal the personal belongings of a person from a chair adjoining that on which he is sitting, or from a room in which he is sleeping, even from beneath his pillow. However, some cases have taken the view that in larceny from the person it is not necessary that the stolen property be taken directly from the person of another, and that it is sufficient if the property be taken fraudulently, privately, and without the knowledge or consent of the owner thereof, and with the intent to steal it, while the property is in the possession and immediate presence of the owner; and accordingly a conviction has been upheld where the property was taken from beneath a pillow of the sleeping owner."

Thus, it appears that there are 2 schools of thought on the subject; one requires a taking from the actual person and the other allows a taking of property in the possession and immediate presence of the owner.

The same question presented here was considered by the court in *State* v. *Kobylasz* (1951), 242 Iowa 1161 (47 NW2d 167), where a woman's purse was

taken, not from her *person,* but from the seat beside her in an automobile. From that opinion comes the following analysis:

"Defendant's complaint of the instruction (submitting larceny from the person) and the verdict based thereon seems also to be that there was no evidence the property was actually taken from Miss Wells' *person.* In *State* v. *Calhoun,* 72 Iowa 432 (34 NW 194, 195), it was held that though the robbery statute contemplates the taking of property 'from the person' of another the language does not mean the property must be 'upon or in some way attached to the person of the individual robbed, or in his immediate presence.' The opinion says: 'If it be away from the owner, yet under his control, in another room of the house  *  *  *  it is nevertheless in his personal possession; and, if he is deprived thereof, it may well be said it is taken from his person.'

"This decision, with others of like character, is cited in the annotation 123 ALR 1099, 1100. It is somewhat in point here by reason of the analogy between the crimes of robbery and larceny from the person. In 52 CJS, Larceny, § 11, it is said: 'to constitute larceny from the person, the thing stolen must be taken from the actual person of the owner, *or at least from his possession and immediate presence*  *  *  *.' The text is supported by citation of *Banks* v. *State,* 74 Ga App 449 (40 SE2d 103). The corresponding text in 36 CJ 754, 755 (§ 66) does not contain the italicized part of the language above-quoted from CJS.

"The Georgia case, *Banks* v. *State,* supra, is the only recent decision which expressly broadens the definition in the respect we are considering. There is an old Minnesota case, *State* v. *Eno,* 8 Minn 220, which says larceny from the person 'extends to every case of stealing where the property stolen is on the person or in immediate charge and custody of the

person.' That seems a reasonable construction. See also: *State* v. *Reyner,* 50 Or 224 (91 P 301, 302).

"The somewhat recent case of *Wilder* v. *State,* 30 Ala App 107 (1 So 2d 317), and the more ancient (1897) one of *People* v. *McElroy,* 116 Cal 583 (48 P 718), construe the language as applying only if the property is taken *off* the person of the complaining witness, which after all is slightly different from the words 'from the person' which do not necessarily connote that the property, when taken, must be actually *on the person.*

"We are not disposed to construe the statute thus narrowly. Here the property was in the possession and immediate presence—in the immediate charge and custody—of the prosecutrix. We think the taking, under the testimony, was away from, though not actually *off,* her person. She was at the moment carrying it on the automobile seat beside her. The jury could find it was stolen from her person." *State* v. *Kobylasz, supra,* pp 1167, 1168.

Thus, in *Banks* v. *State, supra,* and *State* v. *Eno, supra,* convictions of larceny from the person were sustained. In *Banks,* a wallet was taken from beneath the pillow of its sleeping owner and in *Eno* horses were taken from a barn.

The ALR annotation referred to in *Kobylasz* points out that in *robbery* cases, where the property was in the control, custody and protection of the person from whom it is alleged to have been taken, it is not necessary to sustain a conviction that it should have been in actual physical contact with his person.

This theory has been applied to sustain convictions of *robbery* in factual settings identical to the one here; *i.e.,* where defendant took money from the cash register or cash drawer in the immediate presence of the prosecuting witness. The theory was also accepted in *robbery* cases by the Michigan Su-

preme Court in *People* v. *Cabassa* (1930), 249 Mich 543, 547:

"The thought of the statute, as expressed in the language, is that the property must be so in the possession or under the control of the individual robbed that *violence or putting in fear was the means used by the robber to take it.* If it be away from the owner, yet under his control, in another room of the house, as in this case, it is nevertheless in his personal possession; and, if he is deprived thereof, it may well be said it is taken from his person. Goods are called personal property in the law, and (are) presumed to accompany the person. If taken from the owner, this relation of owner and property is surrendered, and the goods are separated from the person." *State* v. *Calhoun,* 72 Iowa 432 (34 NW 194, 2 Am St Rep 252). See, also, 34 Cyc p 1798, 23 RCL pp 1142, 1143. (Emphasis supplied.)

The analogy of robbery cases, however, to those dealing with larceny from the person should not be made. What separates robbery from larceny from the person is violence or the threat of violence. In *Cabassa,* the Supreme Court cited *State* v. *Calhoun,* in which the reason for extending the phrase "from the person" in *robbery* cases is made clear. Such reason does not apply to a case where there is no violence or threat of violence.

"And in *State* v. *Calhoun* (1887), 72 Iowa 432 (34 NW 194, 2 Am St Rep 252), it is said: 'The statute defining robbery, which is correctly quoted in the second instruction given to the jury, contemplates the taking of property "from the person" of another. Counsel interpret this language to mean that the property, in order to constitute the crime, must be upon or in some way attached to the person of the individual robbed, or in his immediate presence. The preposition "from" does not convey the idea of contact or propinquity of the person and property.

It does not imply that the property is in the presence of the person. The thought of the statute, as expressed in the language, is that the property must be so in the possession or under the control of the individual robbed *that violence or putting in fear was the means used by the robber to take it.* If it be away from the owner, yet under his control, in another room of the house, as in this case, it is nevertheless in his personal possession; and, if he is deprived thereof, it may well be said it is taken from his person. Goods are called personal property in the law, and presumed to accompany the person. If taken from the owner, this relation of owner and property is surrendered, and the goods are separated from the person. In the case before us, defendant, by violence bound the prosecuting witness, and thereby put her in fear. By this violence, he extorted from her information of the place where she kept her money and watch in another room of the house. Leaving her bound, he went into that room and took the property. We are clearly of the opinion that it was taken from her person in the sense of the words as used in the statute.' And this language was quoted with approval in *People* v. *Cabassa* (1930), 249 Mich 543." 123 ALR pp 1100, 1101. (Emphasis supplied.)

The analogy of robbery to larceny from the person is dealt with in 32 Am Jur, Larceny, § 44. In discussing the statute of 8 Elizabeth which, for the first time, treated larceny from the person as a greater offense than simple larceny, the following statement appears:

"Under this statute it was held, as it is under some statutes in this country, that there must be an actual taking from the person,—a taking from his presence *is not sufficient as it is in robbery.*" 32 Am Jur, *supra,* pp 942, 943. (Emphasis supplied.)

The Michigan statute calls for a taking from the person and its interpretation in *People* v. *Gadson* (1957), 348 Mich 307, and *People* v. *Stevens* (1968), 9 Mich App 531, is unambiguous, *i.e.*, it is an essential element of larceny from the person that the object be stolen from the person of another. Larceny from the person is an included offense in indictments of robbery and convictions of the lesser offense are proper in cases, *e.g.*, when violence or threats of violence cannot be shown. It is not a lesser offense included in armed robbery when there is no taking from the person, *Kobylasz* and the precedents mentioned therein notwithstanding. The theft in this case was clearly criminal but it was not larceny from the person.

The judge charged the jury as follows:

"Now, the other included offense is larceny from the person. Larceny is the unlawful taking and carrying away of the personal property or goods of another with intent to permanently deprive the owner of the possession of the property; and larceny from the person is the taking of property from the person of an individual. For instance, if somebody would take money out of my hand or out of my pocket, that would be larceny from the person. On the other hand, if they took the property that was not in my personal possession but away from me, maybe even ten feet, that would not be larceny from the person. That would be plain ordinary larceny."

The statement of the law is correct. The real error occurred when the court charged the jury that they could bring in a conviction of larceny from the person in this case. Under the facts in this case, larceny from the person was not an included offense.

The conviction of carrying a concealed weapon must also be set aside for the reasons set forth in

*People* v. *Schrader* (1968), 10 Mich App 211.  The
latter case involves a codefendant in this case.
  Reversed.

  McGREGOR, J., concurred with J. H. GILLIS, P. J.

  THORBURN, J. *(dissenting).*  The issues raised in
this Court were not presented to the trial Court. ·
  This Court in an opinion by Judge FITZGERALD,
concurred in by Chief Judge LESINSKI and Judge
McGREGOR, reviewing the trial of this case reached
the conclusion that the people had not proven that
defendant Schrader lacked a license to carry a con-
cealed weapon.  This had little effect upon the life
and liberty of defendant Schrader, as the concealed
weapon charge now held for naught carried a sen-
tence of three to five years in prison, to run con-
currently with a robbery armed sentence of 15 to
30 years in prison.  *People* v. *Schrader* (1968), 10
Mich App 211, 217.
  Defendant Schrader therefore will continue to
reside in Jackson Prison for some time to come.
  Defendant Gould, determined by the jury to be
a co-conspirator, for reasons best known to the jury
was not convicted of robbery armed but of larceny
from a person and carrying a concealed weapon
without a license.  The only testimony or reference
during the trial to the presence or absence of the
license to carry a concealed weapon follows:

  "Eleanor Blaskowski, sworn by the court clerk on
behalf of the people, was examined and testified as
follows:

             *"Direct Examination.*

      *"By Mr. Laster:*
[1.] *"Q.* What is your name?
    *"A.* Eleanor Blaskowski.

[2.] "*Q.* And what is your occupation?
"*A.* Clerk 3 at the county clerk's office.

[3.] "*Q.* Wayne county clerk's office?
"*A.* That is right, sir.

[4.] "*Q.* And that is for—under the direction of Edgar M. Branigan, the county clerk?
"*A.* That is right.

[5.] "*Q.* Did you have occasion to search the records of the Wayne county clerk's office to determine whether or not William Schrader, Walter Gould and Louis Copciac had a license to carry a concealed weapon?
"*A.* Not at the present time.

[6.] "*Q.* They do not have a license?
"*A.* No, sir."

Referring to these questions by number, it is apparent that the prosecutor proceeded swimmingly until the clerk in answer to question no. 5, a question that should have been answered yes or no, gave the thoroughly unresponsive answer, "Not at the present time". The prosecutor, recognizing that this answer could only mean that the clerk had examined the records and discovered no evidence of the gun license for any of the defendants from the beginning of the world to the present moment, recovered neatly by posing question no. 6: "They do not have a license?" meaning obviously at the time of the crime (the time of the crime having been established by previous proofs referred to in opening statements and not being an issue in the case).

The clerk in complete response answered, "No, sir", meaning she found no evidence of a license granted to the defendants at any point in time.

There was no cross-examination of the clerk, no reference by opening statements, motions to quash, to dismiss, requests to charge, final arguments, or objection or exception to the charge. In short, no

reference by defendants in any way to the lack of proof of no license by the people. A reading of the complete transcript makes it painfully apparent that defendants' counsel, the prosecutor, the trial judge, and most important, the jury, all understood and construed the questions put and the answers given to mean that the clerk had indeed searched the records and found no record of a license to carry a concealed weapon issued to the defendant Gould.

The sole reclining customer, whose wallet was stolen, was not named in the information as was the waitress. Again, as with lack of license, proofs were admitted and a charge was given to the jury on larceny from the person, but this defect was not mentioned throughout the course of the trial and is raised for the first time on appeal.

The failure to raise a question in the lower court precludes this Court considering it on appeal. *Young* v. *Morrow* (1960), 359 Mich 180, 187; *Therrian* v. *General Laboratories, Inc.* (1964), 372 Mich 487, 490.

Justice BRENNAN in *People* v. *Collins* (1968), 380 Mich 131, 135 recites the rule in Michigan:

"Any error (if any) in the formal charge lodged against a defendant is procedural only. It is waived by the entry of a plea thereto. Furthermore, this Court will not regard as the basis for a new trial or reversal of a conviction any procedural error which does not result in a miscarriage of justice. GCR 1963, 529; CL 1948, § 769.26."[*]

---

[*] "Sec. 26. No judgment or verdict shall be set aside or reversed or a new trial be granted by any court of this state in any criminal case, on the ground of misdirection of the jury, or the improper admission or rejection of evidence, or for error as to any matter of pleading or procedure, unless in the opinion of the court, after an examination of the entire cause, it shall affirmatively appear that the error complained of has resulted in a miscarriage of justice."

This Court should not consider errors (if any) first raised on appeal when so eagerly waived in the trial court.

I vote to affirm.