PEOPLE v SMITH-ANTHONY

Docket No. 300480. Submitted December 13, 2011, at Detroit. Decided
    May 3, 2012, at 9:00 a.m. Leave to appeal granted, 493 Mich 879.
Chandra Valencia Smith-Anthony was convicted by a jury in the
    Oakland Circuit Court of larceny from the person, MCL 750.357,
    and was sentenced to a term of 4 to 20 years in prison by the court,
    Michael D. Warren, Jr., J. While monitoring closed-circuit televi-
    sion for Macy's in the Northland Mall, the store's loss-prevention
    detective observed defendant acting suspiciously while shopping
    and proceeded to follow defendant while keeping her within visual
    range. The loss-prevention detective saw defendant select a per-
    fume box set from a display and slip it into one of her bags. The
    detective overheard defendant decline help from sales associates
    and verified that she had not paid for the fragrance. Defendant
    appealed.
        The Court of Appeals *held*:
        To establish larceny from a person, the prosecution must prove
    beyond a reasonable doubt (1) the taking of someone else's
    property without consent, (2) movement of the property, (3) the
    intent to steal or permanently deprive the owner of the property,
    and (4) that the property was taken from the person or the
    person's immediate area of control or immediate presence. The
    crime of theft from the person is an aggravated offense because it
    is a crime against both a person and a person's property rights.
    Punishment for a conviction of larceny from the person is en-
    hanced over that for a simple larceny because violating a person's
    privacy or personal space could result in a violent confrontation.
    The prosecution failed to present sufficient evidence to support
    defendant's conviction of larceny from the person. There was no
    evidence that the loss-prevention detective ever possessed the
    perfume box or that it was in the detective's immediate presence
    or control when defendant pushed the box into her bag or at any
    other point during the larceny. Larceny from the person is not
    accomplished if the victim and the perpetrator are merely in sight
    or hearing range of each other.
        Reversed.
        WHITBECK, J., dissenting, stated that viewing the testimony in a

light most favorable to the prosecution, there was sufficient evidence to support defendant's conviction because defendant was in the loss-prevention detective's immediate area of control or immediate presence when defendant took the box and stuffed it into her bag. The loss-prevention detective, as the employee responsible for protecting the store's property, had a right to possess the property that was superior to defendant's unless she paid for it. The prosecution did not have to prove that the victim—the detective—owned the property, only that the detective's right was superior to defendant's. The loss-prevention detective's testimony established that the detective was close enough to see defendant commit the larceny and hear defendant speak to other employees, and thus that defendant was as a matter of law within the detective's immediate area of control or immediate presence.

CRIMINAL LAW — LARCENY FROM THE PERSON — ELEMENTS — PROXIMITY TO VICTIM.

Larceny from the person requires the prosecution to prove (1) the taking of someone else's property without consent, (2) movement of the property, (3) the intent to steal or permanently deprive the owner of the property, and (4) that the property was taken from the person or from the person's immediate area of control or immediate presence; larceny from the person is not accomplished if the victim and the perpetrator are merely in sight or hearing range of each other (MCL 750.357).

*Bill Schuette*, Attorney General, *John J. Bursch*, Solicitor General, *Jessica R. Cooper*, Prosecuting Attorney, *Thomas R. Grden*, Appellate Division Chief, and *Matthew A. Fillmore*, Assistant Prosecuting Attorney, for the people.

*Law Office of John D. Roach, Jr., PLC* (by *John D. Roach, Jr.*), for defendant.

Before: SHAPIRO, P.J., and WHITBECK and GLEICHER, J.

GLEICHER, J. Defendant, Chandra Valencia Smith-Anthony, placed a $58 box of fragrance in a shopping bag and left the Macy's department store in Northland Mall without paying for it. After completing her larceny

and leaving the store, defendant engaged in a scuffle with a store security officer. A jury acquitted defendant of unarmed robbery but convicted her of larceny from the person in violation of MCL 750.357. Because the statute punishes "stealing from the person of another" and defendant's conduct does not fall within that definition, we reverse.

## I. FACTUAL BACKGROUND

While monitoring a closed-circuit television in Macy's loss-prevention office, Khai Krumbhaar, a loss-prevention detective, observed defendant "darting her eyes around and holding her handbags very, very closely." Krumbhaar believed that defendant looked suspicious, and paid close attention to the television monitors as defendant traversed the aisles. In the women's fragrance department, Krumbhaar saw defendant select "a large gold White Diamonds box," priced at $58, from a display. Krumbhaar walked from her office vantage point to an area within "visual range" of defendant and "kept watching her" while pretending to be just another shopper. Under Krumbhaar's surveillance, defendant carried the White Diamonds box to the women's shoe department, sat down, and tried on some shoes. Defendant then rose from her seat and while making her way to the optical department, pushed the box into her shopping bag. After stopping to verify that defendant had not paid for the fragrance, Krumbhaar followed in pursuit. As defendant browsed near the fashion jewelry area, Krumbhaar "stayed back giving her some space." Krumbhaar then caught sight of defendant "walking very quickly" out of the store. Krumbhaar confronted defendant approximately 30 or 35 feet into the mall surrounding the store, and the two

scuffled. Krumbhaar claimed that during the struggle, defendant bit and scratched Krumbhaar's arm.

The prosecution charged defendant with unarmed robbery, MCL 750.530, second-degree retail fraud, second or subsequent offense, MCL 750.356d(4), and possession of marijuana, MCL 333.7403(2)(d). On the day of trial, the prosecution dismissed the marijuana and retail-fraud charges.[1] The jury acquitted defendant of unarmed robbery, but convicted her of the lesser offense of larceny from the person, MCL 750.357. The court subsequently sentenced defendant to 4 to 20 years' imprisonment.

## II. ANALYSIS

Defendant argues that the prosecution presented no evidence that she stole any item from the person of another and therefore failed to sufficiently support the convicted offense. When reviewing a defendant's challenge to the sufficiency of the evidence, we review "the evidence in a light most favorable to the prosecutor to determine whether any trier of fact could find the essential elements of the crime were proven beyond a reasonable doubt." *People v Robinson*, 475 Mich 1, 5; 715 NW2d 44 (2006). We review de novo underlying issues of statutory interpretation. *People v Tennyson*, 487 Mich 730, 735; 790 NW2d 354 (2010). We must apply the plain, unambiguous language of a statute as written and may only engage interpretative tools when the statutory language is equally susceptible to more than one meaning. *People v Valentin*, 457 Mich 1, 5-6; 577 NW2d 73 (1998).

---

[1] The prosecution likely dismissed the second-degree retail-fraud charge because the statute proscribes the theft of items priced between $200 and $1,000. See MCL 750.356d(1)(b).

The statute at issue in this case could not be simpler. It provides: "Any person who shall commit the offense of larceny by stealing *from the person of another* shall be guilty of a felony, punishable by imprisonment in the state prison not more than 10 years." MCL 750.357 (emphasis added). To establish a larceny-from-the-person charge beyond a reasonable doubt, the prosecution must prove "(1) the taking of someone else's property without consent, (2) movement of the property, (3) with the intent to steal or permanently deprive the owner of the property, and (4) the property was taken *from the person or from the person's immediate area of control or immediate presence." People v Perkins*, 262 Mich App 267, 271-272; 686 NW2d 237 (2004), aff'd 473 Mich 626 (2005) (emphasis added).

In *People v Adams*, 128 Mich App 25, 31-32; 339 NW2d 687 (1983), this Court explained that separate and distinct policies animate the statutes punishing simple larceny and larceny from the person:

> [T]he Legislature decided that larceny from a person presents a social problem separate and apart from simple larceny. This separate social problem must be *the invasion of the person or immediate presence of the victim,* because that is what distinguishes larceny from a person and simple larceny. Because the Legislature clearly intended the statute defining the crime of larceny from a person *to protect the person or immediate presence of the victim from invasion,* the Legislature clearly intended to permit a separate conviction for each victim whose person or immediate presence is invaded. [Emphasis added; citation omitted.]

In *United States v Payne*, 163 F3d 371, 375 (CA 6, 1998), the United States Court of Appeals for the Sixth Circuit construed larceny from the person in violation of MCL 750.357 as "a crime that creates a substantial risk of physical harm to another." The Sixth Circuit reasoned:

> Michigan law interprets "from the person" narrowly to
> require that the property be taken from the possession of
> the victim or be taken from within the immediate presence
> or area of control of the victim. This is clearly the type of
> situation that could result in violence. Any person falling
> victim to a crime involving such an invasion of personal
> space would likely resist or defend in a manner that could
> lead to immediate violence. [*Id.*]

Thus, theft from the person constitutes an aggravated offense because of its hybrid nature as a crime against both a person and a person's property rights.

The larceny-from-the-person statute punishes pickpockets, purse- and wallet-snatchers, and others who invade the person or "immediate presence" of the victim to accomplish a theft. See *People v Gould*, 384 Mich 71, 80; 179 NW2d 617 (1970); *Perkins*, 262 Mich App at 272. Indirect contact with the victim may also constitute larceny from the person. For example, a thief who snatches a suitcase that the victim has momentarily set down while hailing a cab commits larceny from the person, as does a customer who snatches a diamond ring from a tray presented by a jeweler for inspection. In both instances, the theft instills fear or places a resistant victim in danger. The statute enhances punishment in these situations precisely because violating a person's privacy or personal space results in a risk of violent confrontation. *Perkins*, 262 Mich App at 272.

The prosecution presented no evidence that defendant committed larceny from Krumbhaar's person when she stole the fragrance box from Macy's. No testimony supported that Krumbhaar ever possessed the fragrance box or that the merchandise was in Krumbhaar's area of immediate presence or control at any point during the larceny. When defendant first removed the White Diamonds box from the display,

Krumbhaar sat in an office around the corner from the women's fragrance department, watching the event on closed-circuit television. As defendant made her way through Macy's with the box in hand, Krumbhaar remained "in visual range." But Krumbhaar never testified that she was even within an arm's length of defendant or that defendant knew Krumbhaar was nearby. Nor does the record substantiate that Krumbhaar was within defendant's "immediate presence" when defendant pushed the perfume box into her brown grocery bag, completing the act of larceny. See *People v Randolph*, 466 Mich 532, 549; 648 NW2d 164 (2002) ("[W]hen defendant placed the merchandise under his clothing, he committed a taking without force, and his conduct constituted a completed larceny.").[2] Although Krumbhaar could see defendant commit the larceny, the prosecution failed to establish that defendant was ever close enough to Krumbhaar to invade Krumbhaar's personal space.[3]

---

[2] Krumbhaar testified that she "was able to stay fairly close" to defendant in the fragrance department. In our view, that testimony does not describe being within defendant's "immediate presence." Defendant completed her larceny in the shoe department. Krumbhaar's location at that point is not mentioned in the record. No testimony supports that before defendant left the store, Krumbhaar was ever close enough to defendant to have touched her or to have snatched the box from defendant's hands.

[3] We note that the plain and unambiguous statutory language punishes larceny committed "from the person." Other courts construing identical statutory language have rejected the "immediate presence" gloss added in *Gould*. See *Terral v State*, 84 Nev 412, 414; 442 P2d 465 (1968) ("The crime is not committed if the property is taken from the immediate presence, or constructive control or possession of the owner. Other crimes may be committed in those circumstances, but not the crime of larceny from the person. The statutory words 'from the person' mean precisely that.") (citations omitted); *State v Crowe*, 174 Conn 129, 134; 384 A2d 340 (1977) ("In our view, larceny from the person requires an actual trespass to the person of the victim.").

We respectfully disagree with the dissent's proposition that larceny from the person may be accomplished if the victim and the perpetrator are merely in sight or hearing range of each other. *Post* at 428-429. Proof of "stealing from the person of another" requires more than vague proximity between victim and perpetrator. See *People v Gadson*, 348 Mich 307, 308-310; 83 NW2d 227 (1957) (overturning a larceny-from-the-person conviction when the prosecution failed to establish beyond a reasonable doubt that the defendant took the money from the victim's person rather than simply "surreptitious[ly] taking" the money after it fell from the victim's pocket). As interpreted by our Supreme Court in *Gould*, the statute protects property on a victim's person or within a victim's "immediate" custody and control, and the prosecution must present proof beyond a reasonable doubt of that proximity element. *Gould*, 384 Mich at 80.

Further, we find no support in any jurisdiction's caselaw for the dissent's broad definition of "immediate presence." To the extent that the dissent relies on *Gould*, we believe that reliance is misplaced. The defendant and the codefendants in *Gould* entered a restaurant, announced a holdup, and forced a waitress and a customer to lie on the floor of another room. *Gould*, 384 Mich at 73-74. The robbers took $77 from a cash register and a cigar box and $7 from the customer's wallet. *Id.* at 74. A jury convicted the defendant of larceny from the person. *Id.* at 73. This Court had reversed the defendant's conviction because " 'the criminal information on which defendant was tried alleges only the taking of the money from the cash register and cigar box in the presence of the waitress.' " *Id.* at 74-75, quoting *People v Gould*, 15 Mich App 83, 86-87; 166 NW2d 530 (1968). A majority of this Court determined that because the information omitted ref-

erence to the theft from the customer's wallet, " 'lar-
ceny from the person was not an included offense.' "
*Gould*, 384 Mich at 75, quoting *Gould*, 15 Mich App at
92. No objection to the information had been raised in
the trial court. *Gould*, 384 Mich at 76.

The Supreme Court reversed, citing four different
reasons. First, the Supreme Court determined that the
information adequately alleged the theft from the cus-
tomer's wallet. *Id.* at 76-77. Second, the Court held that
the defendant qualified as an "accessory" to the theft
from the wallet. *Id.* at 78. Third, the Court noted that
MCL 767.76 provides that a conviction may not be
reversed "on account of any defect in form or substance
of the indictment" unless an objection was made "prior
to the commencement of the trial or at such time
thereafter as the court shall in its discretion permit."
*Id.* Finally, the Supreme Court held "that the taking of
property in the possession and immediate presence of
the waitress and customer in this case was sufficient to
sustain a verdict against defendant Gould of larceny
from the person." *Id.* at 80. In contrast with *Gould*, no
testimony in this case supports a finding that Krumb-
haar ever got close enough to the White Diamonds box
to immediately possess it or that defendant stole the
item while invading Krumbhaar's person or encroach-
ing on her "immediate presence."[4]

We do not imply that defendant's conduct of resisting
detention or stealing the store's merchandise was law-
ful; defendant's conduct simply did not implicate the
larceny-from-the-person statute. The prosecution could

---

[4] We further find the dissent's reliance on *People v Beebe*, 70 Mich App
154; 245 NW2d 547 (1976), misplaced. In *Beebe*, this Court construed the
armed robbery statute, which at the time applied to armed thefts from a
victim's person "or in his presence." Unlike the statutory prohibition of
larceny from the person, the armed robbery statute protects an area
outside the victim's personal space.

have easily established that defendant committed third-degree retail fraud. See MCL 750.356d(4)(b) (proscribing the theft of merchandise priced less than $200). Defendant's violent actions during her attempted escape also potentially fell within the ambit of the transactional-unarmed-robbery statute. That statute specifically proscribes the use of "force or violence against any person who is present" or assaulting or putting a victim in fear while "in flight or attempted flight after the commission of the larceny, or in an attempt to retain possession of the property." MCL 750.530. However, the jury acquitted defendant of unarmed robbery, and we may not second-guess its judgment. See *United States v Scott*, 437 US 82, 91; 98 S Ct 2187; 57 L Ed 2d 65 (1978) (noting that reconsideration of a jury's judgment of acquittal violates a criminal defendant's constitutional protection against double jeopardy). We must take the charges as we find them, and defendant's actions did not support a charge, let alone a conviction, under the plain language of the larceny-from-the-person statute.

Reversed.

SHAPIRO, P.J., concurred with GLEICHER, J.

WHITBECK, J. (*dissenting*). The majority here decides that defendant, Chandra Valencia Smith-Anthony, did not commit larceny from the person of another[1] because her conduct did not fall within the definition of that crime. I disagree, and I respectfully dissent.

This is a case with only one witness, a Macy's loss-prevention detective named Khai Krumbhaar. Krumbhaar's uncontradicted testimony established that Smith-Anthony selected a box of White Diamonds perfume from

---

[1] MCL 750.357.

a display in the women's fragrance department at Macy's, then walked through other areas of the store, ultimately pushed the White Diamonds box into a bag, and left the store without paying for the perfume.

As the majority sets out, the statute provides, "Any person who shall commit the offense of larceny by stealing *from the person of another* shall be guilty of a felony, punishable by imprisonment in the state prison not more than 10 years."[2] Larceny from the person is a lesser included offense of robbery,[3] and it is "the lack of force or violence [that] distinguishes larceny from a person from the offense of robbery."[4] The operative phrase in the statute is "from the person of another," and the courts have interpreted this phrase as meaning that the property that is the subject of the larceny must be "taken from the person *or from the person's immediate area of control or immediate presence.*"[5]

The person in question here is Krumbhaar, as caselaw holds that a defendant may be found guilty of robbery, or the lesser included offense of larceny from the person, if the defendant takes property owned by a business (such as Macy's) in the immediate presence of an employee (such as Krumbhaar) who oversees or protects the property.[6] As a loss-prevention detective, Krumbhaar clearly oversees and protects Macy's property.

---

[2] *Id.* (emphasis added).

[3] *People v Beach*, 429 Mich 450, 484; 418 NW2d 861 (1988).

[4] *People v Perkins*, 262 Mich App 267, 272; 686 NW2d 237 (2004), aff'd 473 Mich 626 (2005).

[5] *Id.* at 271-272 (stating that the elements of larceny from the person are "(1) the taking of someone else's property without consent, (2) movement of the property, (3) with the intent to steal or permanently deprive the owner of the property, and (4) the property was taken from the person or from the person's immediate area of control or immediate presence").

[6] *People v Gould*, 384 Mich 71, 80; 179 NW2d 617 (1970); See *People v Rodgers*, 248 Mich App 702, 712-713; 645 NW2d 294 (2001) (noting that

But there is no assertion, and no evidence, that Smith-Anthony took the White Diamonds box from Krumbhaar's actual person. The only question, then, is whether there was sufficient evidence for a jury to conclude that when Smith-Anthony took the White Diamonds box and stuffed it into her bag, she was in Krumbhaar's "immediate area of control or immediate presence." (I agree with the majority's view that Smith-Anthony completed the act of larceny when she placed the White Diamonds perfume in her shopping bag.) Viewing Krumbhaar's testimony, as we must, in a light most favorable to the prosecution,[7] I believe there was sufficient evidence to support the guilty verdict that the jury returned on the charge of larceny from the person, a guilty verdict for which the trial court sentenced Smith-Anthony as a third-offense habitual offender[8] to 4 to 20 years in prison. I would affirm the jury's verdict and the trial court's sentence.

## I. FACTS

I accept the majority's statement of facts with one major exception, which relates to Krumbhaar's testimony about what happened after she observed Smith-Anthony's "nervous" behavior on the monitor in the loss-prevention office. At the risk of being tedious, I set out Krumbhaar's testimony verbatim:

> *Q.* Okay, and so based on her behaviors what, if anything, did you do?

---

for purposes of an armed robbery analysis, the court must consider whether an employee had a greater right to the property than the defendant).

[7] *People v Tombs*, 472 Mich 446, 459; 697 NW2d 494 (2005); *People v Ericksen*, 288 Mich App 192, 196; 793 NW2d 120 (2010).

[8] MCL 769.11.

*A.* Based on her behaviors I turned the monitor to follow her as she watched—walked through the men's department and approached the men's fragrance counter.

*Q.* Okay, and then what did you see?

*A.* At the men's fragrance counter I observed her apparently in conversation with one of the associates.

*Q.* Okay.

*A.* She placed her bag on the counter, stood there with the associate for several minutes and then took her bag and walked from the men's fragrance department into the women's fragrance department.

*Q.* Okay. Now, are you still in the office where the closed circuit television is at this point?

*A.* At this point I was.

*Q.* And at that time in the morning were there any other loss prevention officers on duty at that time?

*A.* There were not. The next detectives didn't come in until 11:00.

*Q.* Okay. So what happened next after you saw this person or this female go into the female or the women's fragrance section?

*A.* I noticed the lady walk from the men's fragrance department around into the women's fragrance department. In that department she walked around the outside of the area and then walked to a White Diamonds fragrance display and she selected a large gold White Diamonds box.

*Q.* Okay, White Diamonds is a cologne—

*A.* It's a—

*Q.* —or perfume?

*A.* It's a fragrance.

*Q.* Okay, and you said that she selected a large gold gift box?

*A.* Yes, Ma'am.

*Q.* Okay, so it wasn't just a single box containing one bottle, it was a larger box?

*A.* It was a larger box that has one fragrance bottle and then three various creams that are all scented with White Diamonds.

*Q.* Okay. What, if anything, did you do at that point?

*A.* At that point, based on her behavior and based on the fact that I was the only detective on at the time, I went to the floor to gain floor observation. My office is right around the corner from where the women's fragrance department is.

It took me fifteen, twenty seconds to get in visual range of her again and she still had the box in her hand.

*Q.* Okay. Now, now at this point the box is visible and in her hand?

*A.* Yes.

*Q.* Okay. When you say that you went to floor to gain sight of her—

*A.* Yes.

*Q.* —what did you do once you made it to the floor?

*A.* Because we're plain clothes detectives I pretended to—that I was shopping in the area and kept visual—I kept watching her.

*Q.* Is that part of your role as a loss prevention officer? This is something that you do—

*A.* Yes.

*Q.* —routinely?

*A.* We wear plain clothes.

*Q.* I'm sorry, what?

*A.* We wear plaint [sic] clothes, we just wear normal clothes like we're shopping.

*Q.* Okay.

*A. So I was able to stay fairly close to her in the fragrance department without attract—without her noticing me.*

Q. And what, if anything, did you observe?

*A.* I observed—I observed two different associates approach her and offer assistance *and she both times said that she did not need assistance.* She walked from the women's fragrance department into the women's shoes department and sat down. There, I saw one of the sales people approach her *and she asked for a pair of shoes*—

*Q.* Okay.

*A.* —and she tried on some shoes in the women's shoes department. At that point she had her tote bag and the plastic shopping bag and the White Diamonds gift box next to her on a chair.

*Q.* Okay, and what, if anything, did you notice at that point?

*A.* At that point she still was—she still looked very, very nervous. She was moving a little bit jerkily and she was still kind of pulling the gift box close to her and she was kind of edging it towards her bags.

*Q.* What happened next?

*A.* She got up from her chair in the shoe department and she picked up all of her bags and the gift box and she was holding the gift box down near the opening of the brown shopping bag.

*Q.* Okay.

*A.* And she walked—she rose, she got up from her chair and she walked through women's shoes into the— (undecipherable)—op—optical and at that point she pushed the bag down—or the box down into her shopping bag.

*Q.* Okay. Now when you're talking about the shopping bag are you referring to the tote bag that you described or are you referring to the brown transparent—is that the word you used, transparent?

*A.* Yes.

*Q.* The brown grocery bag?

*A.* The grocery bag.

*Q.* The brown grocery bag, okay. And what happened next?

*A.* At that point it was in the grocery bag but the box was larger than the bag *so I could still see about half the box sticking out.* At that point she walked around the corner from optical into fashion jewelry and I—I followed her through women's shoes and *I stopped to check that she had not purchased the shoe—or the box there. I had not observed her passing money or credit cards.*

*Q.* Okay.

*A.* So I knew that she hadn't paid for the box.

*Q.* Okay. And then what happened?

*A.* I followed her around fashion jewelry and she stopped and stood there for a minute, so I stayed back giving her some space. There were several open registers nearby so I wanted to see if she was going to pay for it, but she did not, she went out walking very quickly, she walked out our fashion jewelry door and out—

*Q.* Okay, now when you—

*A.* —into the mall.

*Q.* I'm sorry?

*A.* She walked out into the mall.[9]

There are several things that stand out from this testimony. First, Krumbhaar personally, and not through the monitor in Macy's loss-prevention office, saw Smith-Anthony in the women's fragrance department with the White Diamonds box in her hand. In other words, Smith-Anthony was within Krumbhaar's line of sight.

Second, Krumbhaar got "fairly close" to Smith-Anthony while she was in the women's fragrance department. In fact, Krumbhaar was close enough to hear

---

[9] Emphasis added.

two different salespersons approach Smith-Anthony and offer assistance and to hear Smith-Anthony decline assistance both times.

Third, Krumbhaar followed Smith-Anthony as she walked into the women's shoe department and remained close enough to Smith-Anthony that she could hear Smith-Anthony when she asked for a pair of shoes.

Fourth, Krumbhaar saw Smith-Anthony place the White Diamonds box into a bag she was carrying, the point at which the majority concludes that Smith-Anthony completed her act of larceny. In fact, Krumbhaar was close enough to Smith-Anthony to observe that about half of the White Diamonds box was sticking out of the bag.

Fifth, Krumbhaar continued to follow Smith-Anthony through the store and out into the mall, and remained close enough that she was able to observe that Smith-Anthony did not pass money or credit cards to pay for the perfume she carried in her bag.

These facts are undisputed. Indeed, I note that defense counsel devoted no time in cross-examination to the question of Krumbhaar's physical location at the time Smith-Anthony placed the White Diamonds box in her bag. With these facts in mind, the issue remains the same: Was there sufficient evidence for a jury to conclude beyond a reasonable doubt that Smith-Anthony was within Krumbhaar's "immediate area of control or immediate presence" when Smith-Anthony completed the larceny at Macy's by placing the White Diamonds box in her bag?

## II. SUFFICIENCY OF THE EVIDENCE

### A. STANDARD OF REVIEW

As I noted, when reviewing the sufficiency of the evidence, this Court reviews the evidence de novo in the

light most favorable to the prosecution.[10] This Court determines whether a rational trier of fact could find that the essential elements of the crime were proved beyond a reasonable doubt.[11]

### B. LEGAL STANDARDS

Again, as I noted, to establish that "the property was taken from the person or from the person's immediate area of control or immediate presence,"[12] the prosecution does not have to show that the victim owned the property taken.[13] Rather, the prosecution need only present sufficient evidence to show that the victim's right to possess the property was superior to the defendant's right to possess it.[14] A defendant may be found guilty of robbery, or the lesser included offense of larceny from the person, if the defendant takes property owned by a business in the immediate presence of an employee who oversees or protects the property.[15] Thus, the jury here could find Smith-Anthony guilty of larceny from the person if it could reasonably find that she took the White Diamonds box, owned by Macy's, in the immediate presence of an employee, Krumbhaar, who oversaw and protected that property.

### C. ANALYSIS

#### 1. CLEARING THE UNDERBRUSH

There is undisputed evidence that at the time of the crime in question, Macy's owned the perfume gift set

---

[10] *Tombs*, 472 Mich at 459; *Ericksen*, 288 Mich App at 196.

[11] *Ericksen*, 288 Mich App at 196.

[12] *Perkins*, 262 Mich App at 272.

[13] *Rodgers*, 248 Mich App at 711.

[14] *Id.*

[15] *Gould*, 384 Mich at 80; *Rodgers*, 248 Mich App at 712-713.

and that Krumbhaar was a Macy's loss-prevention detective. As a Macy's loss-prevention detective, Krumbhaar was an employee responsible for protecting Macy's property.[16] Therefore, Krumbhaar's right to possess the property was superior to Smith-Anthony's right to possess the property before paying for it.[17]

The majority blurs the basic issue by asserting that no testimony "supported that Krumbhaar ever possessed the fragrance box . . . ." But the prosecution never asserted that Krumbhaar physically possessed the White Diamonds box. Caselaw makes it absolutely clear, it is Krumbhaar's *right* to possess the property—as an employee responsible for protecting Macy's property—that is the basic underpinning of the case. And it is also absolutely clear that Krumbhaar's *right* to possess the White Diamonds box was superior to that of Smith-Anthony.

### 2. IMMEDIATE AREA OF CONTROL OR IMMEDIATE PRESENCE

The majority asserts that "[a]lthough Krumbhaar could see defendant commit the larceny, the prosecutor failed to establish that defendant ever came close enough to Krumbhaar to invade Krumbhaar's personal space." Without speculating about the meaning of the words "personal space" in this context, I find nothing in Krumbhaar's testimony that supports this assertion. I note that in performing our review function, this Court is not to make decisions regarding a witness's credibility. The jury found Krumbhaar to be credible regarding what occurred within the Macy's store, and we are not to invade the province of that jury.[18] Further, we are not to determine, when reviewing a criminal conviction on sufficiency of the

---

[16] See *Gould*, 384 Mich at 80; *Rodgers*, 248 Mich App at 712-713.

[17] See *Rodgers*, 248 Mich App at 712.

[18] *People v Petrosky*, 286 Mich 397, 400; 282 NW 191 (1938).

evidence grounds, whether we would have reached the same result as the jury had we been sitting as jurors.[19] Rather, our review is limited to the question of whether there was sufficient evidence from which a rational trier of fact could find that the essential elements of the crime were proved beyond a reasonable doubt.[20]

Krumbhaar's testimony established that she was "fairly close" to Smith-Anthony. In fact, she was close enough not only to *see* Smith-Anthony but also to *hear* her twice decline assistance from salespersons in the women's fragrance department and to *hear* Smith-Anthony when she asked for a pair of shoes in the women's shoe department. Viewing this testimony in a light most favorable to the prosecution, I conclude that there was sufficient evidence from which a jury could find that the prosecution had proved beyond a reasonable doubt that Smith-Anthony was in Krumbhaar's "immediate area of control or immediate presence".

In my view, when a loss-prevention detective, whose job it is to protect his or her employer's property, is close enough to a defendant to *see* that defendant commit the crime of larceny from the person and to actually *hear* that defendant speak to other employees in the store, the defendant is as a matter of law within the loss-prevention detective's immediate area of control or immediate presence.[21] Thus, given that both of these criteria are satisfied here, there was sufficient evidence to support the jury's verdict.

I would affirm.

---

[19] See *People v Lemmon*, 456 Mich 625, 637; 576 NW2d 129 (1998) (noting that a judge does not sit as a thirteenth juror regarding witness credibility).

[20] *Ericksen*, 288 Mich App at 196.

[21] See *People v Beebe*, 70 Mich App 154, 159; 245 NW2d 547 (1976).