# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
February 5, 2015

Plaintiff-Appellee,

v

No. 316835
Cass Circuit Court
LC No. 12-010105-FH

SCOTT REED BLAISDELL,

Defendant-Appellant.

Before: BOONSTRA, P.J., and DONOFRIO and GLEICHER, JJ.

PER CURIAM.

A jury convicted defendant of operating or maintaining a controlled substance laboratory involving hazardous waste, MCL 333.7401c(2)(c); operating or maintaining a controlled substance laboratory involving a firearm, MCL 333.7401c(2)(e); operating or maintaining a controlled substance laboratory involving methamphetamine, MCL 333.7401c(2)(f); possession of methamphetamine, MCL 333.7403(2)(b)(*i*); possession of a dangerous weapon, MCL 750.224(1); manufacture of less than 20 marijuana plants, MCL 333.7401(2)(d)(*iii*); possession of marijuana, MCL 333.7403(2)(d); maintaining a drug house, MCL 333.7405(1)(d); and six counts of possession of a firearm during the commission of a felony, MCL 750.227b.[1] We affirm defendant's convictions and sentences.

## I. BACKGROUND

Based on national database entries and retail store logs indicating that defendant and his wife had purchased excessive amounts of pseudoephedrine products, police suspected that defendant was manufacturing methamphetamine. Officers secured a warrant and searched defendant's home. In a spare bedroom, they found a simplistic, "one-pot" methamphetamine laboratory, consisting of a two-liter plastic bottle and tubing (complete with leftover liquid from a methamphetamine-cooking session). Throughout the home, they found various ingredients and tools used in the manufacture of methamphetamine, including Coleman camp fuel, lithium batteries, a coffee grinder and coffee filters (both covered in a residue indicative of

---

[1] The jury acquitted defendant of possession of a bomb with unlawful intent and the related felony-firearm count.

-1-

methamphetamine manufacture), muriatic acid, pseudoephedrine products, and plastic tubing. The officers discovered a recipe for manufacturing methamphetamine in defendant's wife's jewelry box and a Ziploc bag of liquid byproduct hanging in a closet. They also found materials for using methamphetamine, including straws and tin foil with singe marks. Inside a kitchen closet, the officers found a single marijuana plant. They also discovered baggies containing small amounts of marijuana in a drawer. There were several guns in the home as well, and something resembling a homemade explosive device. Based on this evidence, defendant was charged with several drug and weapons offenses.[2]

## II. DOUBLE JEOPARDY

Defendant first argues that his separate convictions for (1) operating or maintaining a controlled substance laboratory involving a firearm, (2) operating or maintaining a controlled substance laboratory involving hazardous waste, and (3) operating or maintaining a controlled substance laboratory involving methamphetamine violate double jeopardy. Defendant did not raise a double jeopardy argument in the trial court, and we review this unpreserved constitutional issue for plain error affecting substantial rights. *People v McGee*, 280 Mich App 680, 682; 761 NW2d 743 (2008).

Both the federal and state constitutions protect a defendant from being twice placed in jeopardy, or subject to multiple punishments, for the same offense. US Const, Am V; Const 1963, art 1, § 15. The "same elements" test, first articulated in *Blockburger v United States*, 284 US 299; 52 S Ct 180; 76 L Ed 306 (1932), is the appropriate test for determining whether multiple punishments are barred by either the state or federal constitution. *People v Smith*, 478 Mich 292, 315-316; 733 NW2d 351 (2007). Under that test, there is no double jeopardy violation if each offense requires proof of a fact that the other does not. *Blockburger*, 284 US at 304; *Smith*, 478 Mich at 306-307.

Defendant was charged with and convicted of all three offenses under MCL 333.7401c, which provides, in relevant part:

(1) A person shall not do any of the following:

(a) Own, possess, or use a vehicle, building, structure, place, or area that he or she knows or has reason to know is to be used as a location to manufacture a controlled substance . . . .

(b) Own or possess any chemical or any laboratory equipment that he or she knows or has reason to know is to be used for the purpose of manufacturing a controlled substance . . . .

* * *

---

[2] Defendant's wife was also charged with several offenses. She pleaded guilty to two controlled substance offenses and was sentenced to a two-year term of probation.

(2) A person who violates this section is guilty of a felony punishable as follows:

* * *

(c) If the violation involves the unlawful generation, treatment, storage, or disposal of a hazardous waste, by imprisonment for not more than 20 years or a fine of not more than $ 100,000.00, or both.

* * *

(e) If the violation involves the possession, placement, or use of a firearm or any other device designed or intended to be used to injure another person, by imprisonment for not more than 25 years or a fine of not more than $ 100,000.00, or both.

(f) If the violation involves or is intended to involve the manufacture of a substance described in [MCL 333.7214(c)(*ii*), i.e. methamphetamine], by imprisonment for not more than 20 years or a fine of not more than $ 25,000.00, or both.

Defendant was convicted of the same base offense on all three charges, but under three separate aggravating circumstances. Because each aggravating factor embodies an element different from the charge related to the other aggravating factors, no double jeopardy violation occurred in this case.

In this regard, we find instructive a comparison to this Court's opinion in *People v Meshell*, 265 Mich App 616; 696 NW2d 754 (2005). In *Meshell*, the defendant was convicted of operating a methamphetamine laboratory and operating a methamphetamine laboratory within 500 feet of a residence. He therefore was convicted of the base offense standing alone and then the base offense with an aggravating factor. *Id*. at 628. These convictions violated the Double Jeopardy Clause because the elements of the base offense were wholly subsumed in the charge including an aggravating factor. *Id*. at 630-631. Similar to this case, in its order denying leave to appeal in *People v Routley*, 485 Mich 1075, 1075-1076; 777 NW2d 160 (2010), the Supreme Court found as we do that a defendant's convictions under two separate aggravating factors (there MCL 333.7401c(2)(d) and (f)) do not violate double jeopardy principles because each offense contains an element that the other does not. Accordingly, neither the federal nor our State's Double Jeopardy Clauses bar defendant's three methamphetamine-related convictions flowing from MCL 333.7401c.

III. SUFFICIENCY OF THE EVIDENCE—MAINTAINING A DRUG HOUSE

Defendant further argues that the evidence is insufficient to support his conviction for maintaining a drug house in violation of MCL 333.7405(1)(d). We disagree.

We review de novo challenges to the sufficiency of the evidence. *People v Harverson*, 291 Mich App 171, 177; 804 NW2d 757 (2010). The test is "whether the evidence, viewed in a light most favorable to the people, would warrant a reasonable juror in finding guilt beyond a reasonable doubt." *People v Nowack*, 462 Mich 392, 399; 614 NW2d 78 (2000). We draw all

reasonable inferences in favor of the prosecution and defer to the trier of fact on all credibility determinations. *Id*. at 400. "Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *Id*. (quotation marks and citation omitted). We also review de novo underlying issues of statutory interpretation. *People v Smith-Anthony*, 296 Mich App 413, 416; 821 NW2d 172 (2012). "We must apply the plain, unambiguous language of a statute as written and may only engage interpretative tools when the statutory language is equally susceptible to more than one meaning." *Id*.

Defendant argues that this conviction cannot stand as there was no evidence that he sold drugs from his residence, used the building for the primary purpose of manufacturing drugs, or invited visitors for the purpose of using drugs together. We disagree. While defendant may be correct that no such evidence was presented, MCL 333.7405(1)(d), as crafted by our Legislature, does not require that there be any such evidence.

MCL 333.7405(1)(d) provides that a person

> [s]hall not knowingly keep or maintain a . . . dwelling, building . . . or other structure or place, that is frequented by persons using controlled substances in violation of this article for the purpose of using controlled substances, or that is used for keeping or selling controlled substances in violation of this article.

The plain language of MCL 333.7405(1)(d), and its use of the disjunctive term "or," thus establish that there are two alternative means by which to unlawfully keep or maintain a drug house: (1) "keep or maintain" a house "that is frequented by persons using controlled substances . . . for the purpose of using controlled substances" or (2) "keep or maintain" a house "that is used for keeping or selling controlled substances."

In *People v Thompson*, 477 Mich 146, 155; 730 NW2d 708 (2007), our Supreme Court considered the meaning of the statutory language "keep or maintain" (which is common to both alternatives), and determined that a person does not "keep or maintain" a drug vehicle simply by engaging in an isolated act of selling drugs out of that vehicle. Rather, "[t]he phrase 'keep or maintain' implies usage with some degree of continuity that can be deduced by actual observation of repeated acts or circumstantial evidence . . . that conduces to the same conclusion." *Id*.

Defendant first contends that there was insufficient evidence of continuity. We disagree. Regardless of whether the direct evidence presented at trial demonstrated that defendant was manufacturing or using controlled substances in his home over a period of time, there was sufficient circumstantial evidence from which the jury could reasonably reach that conclusion. Defendant himself acknowledges that the evidence confirmed defendant's possession of "a two-liter bottle that was used to make methamphetamine through the 'one-pot' method," "coffee filters and a coffee grinder 'with white, ground up residue powder in it, which is commonly used to grind up ephedrine or pseudoephedrine pills,' " "a tin that consisted of straws, tin foil, plastic bags, and coffee filters," the straws being "commonly used to smoke or snort methamphetamine," a marijuana plant, bags of marijuana and marijuana stems or seeds. The evidence further reflected that defendant possessed additional items connected to the manufacture of methamphetamine, including plastic tubing consistent with use for a gas

generator, other plastic tubing of which later testing confirmed the presence of methamphetamine and Sudafed, used lithium batteries, Coleman fuel cans, muriatic acid, a coffee filter with white powder residue, consistent with ground up ephedrine, a coffee grinder (but no coffee or coffee maker) also with white residue, a tin with several straws and tin foils, both commonly used to snort or smoke methamphetamine, baggies of marijuana, 17.8 grams of plant material that tested positive for marijuana, a recipe for methamphetamine detailing the one-pot method, a gallon-sized baggie of liquid commonly used in the methamphetamine manufacturing process, a liquid containing light petroleum distillate, or camp fuel, and another liquid that tested positive for methamphetamine.

In evaluating this evidence, we are mindful that the test for challenges to the sufficiency of the evidence is "whether the evidence, viewed in a light most favorable to the people, would warrant a reasonable juror in finding guilt beyond a reasonable doubt." *People v Nowack*, 462 Mich 392, 399; 614 NW2d 78 (2000). Further, we must draw all reasonable inferences in favor of the prosecution and defer to the trier of fact on all credibility determinations. *Id*. at 400. "Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *Id*. (quotation marks and citation omitted). Circumstantial evidence also can satisfy the continuity element of MCL 333.7405(1)(d). *Thompson*, 477 Mich at 155. Viewed in that light, and given the fact that different drugs, the ingredients and tools for manufacturing them, and the instruments for using them, were stored throughout the house, we find that the jury in this case acted reasonably in concluding that the evidence was sufficient to demonstrate that the manufacture or use of controlled substances was not a single, isolated occurrence, but rather was an ongoing event in the home, and thus that it was sufficient to convict defendant of the crime of maintaining a drug house, MCL 333.7405(1)(d).[3]

Defendant also contends that he could not be convicted of maintaining a drug house where the substantial purpose of his home was for housing his family rather than the manufacture and/or use of controlled substances. We disagree.

Once again, defendant relies on *Thompson* as support for its "substantial purpose" argument. However, our Supreme Court in *Thompson* did not adopt a "substantial purpose" requirement. "Substantial purpose" simply was not at issue in *Thompson*. Nor does the statutory language establish such a requirement. While both statutory alternatives require that the defendant "keep or maintain" the house, only the first alternative contains the element that the

---

[3] Defendant further suggests that the drugs were "for his own personal consumption" and that there was no evidence that "anyone other than Mr. and Mrs. Blaisdell used" them or that he "was producing more drugs than what was needed for his own personal use." While defendant maintains that "[p]ersonal drug use by the homeowner in their home should not automatically turn the dwelling into a 'drug house,' " he does not develop that argument or provide any support for it beyond citing to *Thompson* (which did not address the issue). To the contrary, neither MCL 333.7405(1)(d) nor the caselaw establishes any "personal use" exemption to the crime of maintaining a drug house.

house be "frequented by persons using controlled substances . . . for the purpose of using controlled substances." The second alternative, which is what is at issue in this case, does not contain that element, but merely requires that the house "is used for keeping or selling controlled substances."[4]

Defendant's argument is instead premised on *Thompson*'s quotation of language employed in an Alaska Court of Appeals case, *Dawson v State*, 894 P2d 672, 678-679 (Alaska App, 1995), in surveying the law of other states. However, our Supreme Court in *Thompson* did not employ that language to create a "substantial purpose" requirement; as noted, "substantial purpose" was simply not at issue in *Thompson*.[5] See *Griswold Properties, LLC v Lexington Ins Co*, 276 Mich App 551, 563; 741 NW2d 549 (2007) ("Stare decisis does not arise from a point addressed in obiter dictum").

We therefore find that there was sufficient evidence to uphold defendant's conviction under MCL 333.7405(1)(d).

IV. SUFFICIENCY OF THE EVIDENCE—MANUFACTURING MARIJUANA

Defendant also challenges the sufficiency of the evidence supporting his conviction for manufacturing marijuana in violation of MCL 333.7401(2)(d)(*iii*). MCL 333.7401(1) provides that "a person shall not manufacture . . . or possess with intent to manufacture . . . a controlled substance . . . ." Subsection (2)(d)(*iii*) continues that a person who violates the statute by manufacturing or possessing with intent to manufacture marijuana consisting of "fewer than 20 plants" is guilty of a felony. Accordingly, to support a conviction for manufacturing marijuana, the prosecution must prove that (1) the defendant manufactured a controlled substance; (2) the controlled substance was marijuana; and (3) the defendant knew that he was manufacturing marijuana. MCL 333.7401(2)(d); CJI2d 12.1. And, as marijuana is a Schedule 1 controlled substance, the prosecution was also required to establish the amount of marijuana involved. CJI2d 12.1.

The prosecution presented more than adequate evidence to support defendant's conviction of this offense. Police discovered a potted marijuana plant in the kitchen closet of defendant's home. An officer testified that the plant was readily identifiable as marijuana, and

---

[4] In other words, the statutory language only requires a "purpose" under the first alternative, and the "purpose" referenced in the statute is not the homeowner's purpose in keeping or maintaining the house, but rather the purpose of those persons who frequent the house to use controlled substances there.

[5] Even if we were to interpret *Thompson* more broadly, the prosecution would not be required to prove that *the* substantial purpose of the house was to keep or sell controlled substances, but rather that it was "*a* substantial purpose." *Thompson*, 477 Mich at 156, quoting *Dawson*, 894 P 2d at 678-679 (emphasis added). In this case, there was sufficient evidence from which a jury could reasonably conclude that a substantial purpose of the house was its use for "keeping or selling" controlled substances.

the other, loose marijuana found in defendant's home supported an inference that defendant was familiar with the substance and therefore knew he was growing marijuana. The statute specifically permits conviction when less than 20 plants are discovered, and one plant was found in defendant's home. Under the plain language of the statute, manufacturing even a single marijuana plant is punishable by law. We reject defendant's argument that he could not be convicted where the marijuana plant was in poor health and where there was no evidence of a sophisticated marijuana grow operation in his home. The statute does not require a defendant to be a skilled horticulturist in order to be convicted of manufacturing marijuana.

## V. STANDARD 4 BRIEF

Defendant raises several issues in a pro se Standard 4 brief, filed pursuant to Supreme Court Administrative Order No. 2004-06, Standard 4, each of which we find to be without merit.

## A. SEARCH WARRANT

Defendant challenges the sufficiency of the search warrant and thereby the admissibility of the evidence uncovered at his home. Defendant sought to suppress the evidence based on the insufficiency of the search warrant affidavit, but the trial court denied his motion. Defendant contends that the search warrant affidavit did not allege facts amounting to probable cause to issue a warrant as the officer relied solely on reporting logs of pseudoephedrine purchases, without conducting any independent investigation into their accuracy. Moreover, defendant notes that the purchases he and his wife made were within legal limits. Defendant further implies that the affiant made false and misleading statements in the affidavits.

We review de novo legal and constitutional questions affecting a trial court's decision on a motion to suppress and its factual findings for clear error. *People v Keller*, 479 Mich 467, 473-474; 739 NW2d 505 (2007); *People v Brown*, 297 Mich App 670, 674; 825 NW2d 91 (2012).

> A search warrant may only be issued upon a showing of probable cause. Probable cause to issue a search warrant exists if there is a substantial basis for inferring a fair probability that evidence of a crime exists in the stated place. Probable cause must be based on facts presented to the issuing magistrate by oath or affirmation, such as by affidavit. [*Brown*, 297 Mich App at 675 (citations omitted).]

When assessing a magistrate's decision with regard to probable cause, we must ask "whether a reasonably cautious person could have concluded that there was a 'substantial basis' for the finding of probable cause." *People v Russo*, 439 Mich 584, 603; 487 NW2d 698 (1992). We must read the search warrant and the underlying affidavit in "a common-sense and realistic manner," giving deference to the trial court's conclusion. *Id*. at 604.

In this case, Deputy Kim Purlee, a member of the Cass County Drug Enforcement Team (CCDET), swore in an affidavit that she personally reviewed pseudoephedrine purchase lists from two Walmart stores and then reviewed a national database for such purchase lists from

other stores.[6]  This investigation revealed that defendant and his wife "each had one of the highest amount of 'Total Activity Grams' for pseudoephedrine purchases."  The affidavit outlined the purchases made by defendant and his wife between October 2011 and February 2012, at five separate stores.  Specifically, defendant and his wife had purchased pseudoephedrine pills seven times in October 2011, four times in November 2011, six times in December 2011, five times in January 2012, and three times in February 2012, with the last purchase occurring on February 15, 2012.  Defendant was blocked from purchasing pseudoephedrine twice in January 2012 and once in February 2012, based on the amount he and his wife had already purchased.

Based on her experience, Detective Purlee asserted that the amount of pseudoephedrine purchased by defendant and his wife in such a short time span was suspicious, because pseudoephedrine is the main ingredient in methamphetamine.  She further represented, based on her training and experience, that individuals who manufacture methamphetamine often keep the manufacturing components in and around their homes for substantial periods of time, and accordingly expressed her belief that evidence of criminal activity would be found at defendant's home.

We discern no error in the trial court's conclusion that probable cause existed to support the search warrant.  The store log books and national database contained a lengthy history of substantial amounts of pseudoephedrine purchases by both defendant and his wife, including attempts to purchase which were blocked because defendant had exceeded the maximum amount allowed by law.  Detective Purlee described her experience in investigating methamphetamine manufacturing cases and the suspicions raised by defendant's purchases.  The trial court was permitted to rely on Detective Purlee's conclusion based on her experience in the field.  See *People v Darwich*, 226 Mich App 635, 639; 575 NW2d 44 (1997).  And the evidence gathered from the logs was adequate for a "reasonably cautious person" to find "a substantial basis for inferring a fair probability that evidence of a crime exists in the stated place."

We also discern no error in declining to suppress the evidence based on the perceived falsities and misstatements in the affidavit emphasized by defendant.

> [W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of

---

[6] All retailers of pseudoephedrine products are required to maintain logs of sales according to state law.  See MCL 333.17766e.

the affidavit. [*Franks v Delaware*, 438 US 154, 155-156; 98 S Ct 2674; 57 L Ed 2d 667 (1978).]

To support striking information from the search warrant affidavit, the defendant must "show by a preponderance of the evidence that the affiant has knowingly and intentionally or with reckless disregard for the truth inserted false material into the affidavit and that the false material is necessary to a finding of probable cause." *People v Williams*, 134 Mich App 639, 643; 351 NW2d 878 (1984) (quotation marks and citation omitted).

Defendant has not met his burden. Defendant contends that Detective Purlee misrepresented the number of methamphetamine investigations in which she took part, but provides no evidence to support his alternate suggestion that she had participated in only 35. Defendant contends that Detective Purlee misrepresented or exaggerated the pseudoephedrine log evidence and thereby improperly suggested that defendant violated the law with his purchases. A review of the log records provided by defendant, however, reveals that Detective Purlee's analysis was accurate. Defendant complains that the detective misidentified the direction in which the door to his house faced; however, this piece of information was completely irrelevant to the probable cause determination. Ultimately, defendant provided no grounds supporting the invalidation of the search warrant and requiring the suppression of the evidence discovered in his home.

## B. PROSECUTION'S FAILURE TO DISCLOSE

Defendant next argues that the prosecution committed numerous *Brady*[7] violations by failing to disclose exculpatory and impeachment evidence. Because defendant failed to raise a *Brady* violation in the trial court, our review is limited to plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).

In *Brady*, 373 US at 87, the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution." In *People v Chenault*, 495 Mich 142, 150; 845 NW2d 731 (2014), our Supreme Court clarified the three components of a *Brady* violation: "(1) the prosecution has suppressed evidence; (2) that is favorable to the accused; and (3) that is material." Evidence is deemed "favorable to the defense" if it is exculpatory or can be used for impeachment purposes. *Id.* "To establish materiality, a defendant must show that 'there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Id.* (citation omitted).

Defendant contends that the prosecution should have honored his discovery request for "documents and materials used by the Cass County Sheriff Department for training, relating to the review" of store logs and national database logs of pseudoephedrine purchases, "complete signature logs" from the time period in question, and Detective Purlee's personnel files.

---

[7] *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963).

Defendant provides no discussion of why the training materials would be exculpatory, abandoning his right to appellate review of that issue. *People v Kevorkian*, 248 Mich App 373, 389; 639 NW2d 291 (2001).

Defendant comments at length regarding Detective Purlee's misdeeds in her official position, leading to her termination from the CCDET. He even accuses the detective of perjuring herself in relation to her investigation into the pseudoephedrine purchase logs. Defendant does not factually support his charge of perjury in this case. And, given that the evidence uncovered at defendant's home verified Detective Purlee's allegations in the search warrant affidavit and on the stand regarding material points, we fail to see how Detective Purlee's disciplinary record could have assisted defendant in this case.

Defendant also suggests that many of the signatures in the store logs that were produced during discovery do not match his handwriting. He maintains that he required the remainder of the logs to establish that many purchases were made by an unknown individual falsely using defendant's name. Even if the prosecution failed to produce a complete copy of the records in its control, we discern no reversible error. While defendant claims that some signatures were forgeries, he does not deny that at least *some* of the signatures were his. Moreover, defendant's convictions were supported by the evidence found in his home, not by his history of pseudoephedrine purchases. There is no "reasonable probability" that, had the evidence been disclosed, the result of the trial would have been different. *Chenault*, 495 Mich at 150.

## C. ASSISTANCE OF COUNSEL

Defendant finally raises numerous claims of ineffective assistance of counsel. Defendant failed to move in the trial court for a new trial or a *Ginther*[8] hearing, and this Court previously denied defendant's motion to remand for failure to persuade the panel of a need for an evidentiary hearing to develop the record. *People v Blaisdell*, unpublished order of the Court of Appeals, entered July 15, 2014 (Docket No. 316835). Our review of defendant's claims is therefore limited to mistakes apparent on the record. *People v Horn*, 279 Mich App 31, 38; 755 NW2d 212 (2008).

> " '[T]he right to counsel is the right to the effective assistance of counsel.' " *United States v Cronic*, 466 US 648, 654; 104 S Ct 2039; 80 L Ed 2d 657 (1984), quoting *McMann v Richardson*, 397 US 759, 771 n 14; 90 S Ct 1441; 25 L Ed 2d 763 (1970). An ineffective assistance claim includes two components: "First, the defendant must show that counsel's performance was deficient. . . . Second, the defendant must show that the deficient performance prejudiced the defense." *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984). To establish the deficiency component, a defendant must show that counsel's performance fell below "an objective standard of reasonableness" under "prevailing professional norms." *People v Solmonson*, 261 Mich App 657, 663; 683 NW2d 761 (2004). With respect to the prejudice aspect,

---

[8] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

the defendant must demonstrate a reasonable probability that but for counsel's errors, the result of the proceedings would have differed. *Id*. at 663-664. The defendant also must overcome the strong presumptions that his "counsel's conduct [fell] within the wide range of reasonable professional assistance," and that counsel's actions were sound trial strategy. *Strickland*, 466 US at 689. [*People v Galloway*, ___ Mich App ___; ___ NW2d ___ (Docket No. 316262, issued October 7, 2014), slip op at 5.]

Defendant first asserts that defense counsel "failed to adequately investigate possible defenses before trial" based on Detective Purlee's failure to connect any criminal activity to defendant's pseudoephedrine purchases prior to securing a search warrant, conduct any in-store surveillance, interview any store employees, or make any police reports regarding defendant's alleged wrongdoing. This information might have been relevant when challenging the sufficiency of the search warrant. But it was no longer relevant by the time of trial as officers had secured evidence of drug use, possession, and manufacture from defendant's home. No viable trial defense could have been fashioned based on the detective's earlier investigation into the purchase of pseudoephedrine products. The same is true of defendant's challenge to defense counsel's failure to follow through and secure copies of law enforcement training manuals on investigating methamphetamine cases.

Defendant contends that counsel should have presented the testimony of store employees who allegedly sold pseudoephedrine to defendant. He further asserts that counsel should have pursued and obtained complete copies of the store purchase logs containing the purchasers' signatures to establish that some of his signatures were forged by another individual. Again, in light of the evidence secured from defendant's home, defendant cannot establish that the absence of these witnesses or evidence was prejudicial.

Defendant contends that defense counsel should have impeached Detective Purlee's credibility with instances of her official misconduct. Similarly, defendant challenges counsel's failure to secure the detective's complete personnel file. However, the record reveals that counsel actually questioned the detective about several incidents of misconduct, including one that resulted in her removal from the CCDET. Accordingly, the absence of complete records did not prejudice the defense.

Affirmed.

/s/ Mark T. Boonstra
/s/ Pat M. Donofrio

-11-