*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

JACK RAYMOND SMOTHERS,

Defendant-Appellant.

UNPUBLISHED
December 03, 2025
2:47 PM

No. 368625
Kalamazoo Circuit Court
LC No. 2021-001276-FH

Before: RICK, P.J., and MALDONADO and KOROBKIN, JJ.

PER CURIAM.

Defendant appeals by right his jury trial convictions of making a terrorist threat, MCL 750.543m, and aggravated stalking, MCL 750.411i.[1] Defendant also appeals his resulting sentence of 5 to 25 years' imprisonment. For the reasons stated in this opinion, we affirm.

## I. BACKGROUND AND FACTS

This case arises out of three telephone calls that defendant made on the morning of July 28, 2021. At 6:28 a.m., defendant called 911. Defendant said that he was in the city of Galesburg and that he was being harassed by Deputy Timothy Randall, an officer with the Kalamazoo County Sheriff's Office who was assigned to Galesburg. Defendant said that he was going to sit in the park and that, if he was harassed by Deputy Randall again, he would kill Deputy Randall. Defendant told the 911 operator to "tell him," referring to Deputy Randall, about his threats. Defendant further stated that he would "smoke" any other police officer who harassed him. 911 dispatch called defendant back at 7:35 a.m. and 7:36 a.m.; defendant repeated his threat to shoot and kill "one by one" anyone who messed with him, and he stated that he would "have self-defense." Defendant also called the local district court at 8:05 a.m. Defendant again threatened to kill Deputy Randall and demanded to speak with the elected prosecuting attorney and the sheriff of Kalamazoo County. Defendant also left a voice mail message at the Galesburg city manager's

---

[1] Defendant was also convicted of three counts of malicious use of telecommunication services, MCL 750.540e, that he does not challenge on appeal.

office sometime before 8:00 a.m. In the voice mail, defendant said that he had spoken with the prosecuting attorney. Defendant again demanded that Deputy Randall stop harassing him or defendant would shoot him.

Officer Joseph Coleman, also of the Kalamazoo County Sheriff's Office, investigated the calls. Deputy Randall learned later that day that defendant had made threats against his life; however, Deputy Randall did not learn the details of defendant's threats nor listen to the recordings of the phone calls. Deputy Randall and Officer Coleman searched for defendant that day, but they did not find him.

At trial, Deputy Randall testified that he believed that defendant's threats were credible because defendant called three different locations to threaten the deputy. Deputy Randall testified that he felt frightened, terrorized, and intimidated by defendant's threats. Officer Coleman also testified that he believed that the threats were credible.

Deputy Randall testified that his first encounter with defendant was when he removed defendant from a park in Galesburg for drinking alcohol earlier in 2021. Deputy Randall was then asked whether that was the only time he saw defendant before defendant made the threats. Deputy Randall seemed to answer yes, but he did not give a clear answer. Later, Deputy Randall stated that he and Officer Coleman had also arrested defendant on an outstanding warrant. The trial court, sua sponte, initially struck that testimony, but later allowed Deputy Randall to testify about the arrest over defense counsel's objection. Defense counsel moved for a mistrial because of Deputy Randall's inconsistent testimony, but the trial court denied the motion. Also over defense counsel's objection, Deputy Randall testified that he had learned from Officer Coleman and others that defendant had a criminal history. At the close of evidence, defendant moved for a directed verdict because of insufficient evidence on the aggravated stalking count, which the trial court denied.

Ultimately, the jury found defendant guilty, as stated earlier. The trial court sentenced defendant, as a fourth-offense habitual offender, MCL 769.12, to serve 5 to 25 years' imprisonment. This appeal followed.

## II. ANALYSIS

### A. SUFFICIENCY OF THE EVIDENCE

Defendant argues that the evidence was insufficient to sustain his convictions for aggravated stalking and for making a terrorist threat. We disagree.

Challenges to the sufficiency of the evidence are reviewed de novo. *People v Isrow*, 339 Mich App 522, 526; 984 NW2d 528 (2021). "The sufficient evidence requirement is a part of every criminal defendant's due process rights." *People v Wolfe*, 440 Mich 508, 514; 489 NW2d 748, amended on other grounds 441 Mich 1201 (1992). "In determining whether sufficient evidence exists to sustain a conviction, this Court reviews the evidence in the light most favorable to the prosecution, and considers whether there was sufficient evidence to justify a rational trier of fact in finding guilt beyond a reasonable doubt." *People v Oros*, 502 Mich 229, 239; 917 NW2d 559 (2018) (quotation marks and citation omitted). We are "required to draw all reasonable

-2-

inferences and make credibility choices in support of the jury verdict." *Id*. (quotation marks, citation, and emphasis omitted). Circumstantial evidence and reasonable inferences arising from that evidence can be sufficient to prove the elements of a crime. *Id*.

We also review "underlying issues of statutory interpretation" de novo. *People v Smith-Anthony*, 296 Mich App 413, 416; 821 NW2d 172 (2012). Our goal in interpreting a statute is to give effect to the intent of the Legislature. *People v Stone*, 463 Mich 558, 562; 621 NW2d 702 (2001). "The statute's words are the most reliable indicator of the Legislature's intent . . . ." *People v Mullins*, 322 Mich App 151, 159; 911 NW2d 201 (2017) (quotation marks and citations omitted). When a statutory term is not defined, we give the term its common and ordinary meaning. *People v McIntire*, 461 Mich 147, 153; 599 NW2d 102 (1999); MCL 8.3a.

## 1. AGGRAVATED STALKING

"Aggravated stalking consists of the crime of 'stalking', MCL 750.411h(1)[(e)], and the presence of an aggravating circumstance specified in MCL 750.411i(2)." *People v Threatt*, 254 Mich App 504, 505; 657 NW2d 819 (2002). " 'Stalking' means a willful course of conduct involving repeated or continuing harassment of another individual that would cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed, or molested and that actually causes the victim to feel terrorized, frightened, intimidated, threatened, harassed, or molested." MCL 750.411i(1)(e). " 'Harassment' means conduct directed toward a victim that includes, but is not limited to, repeated or continuing unconsented contact that would cause a reasonable individual to suffer emotional distress and that actually causes the victim to suffer emotional distress. . . ." MCL 750.411i(1)(d). MCL 750.411i(2)(c) lists as an aggravating circumstance: "The course of conduct includes the making of 1 or more credible threats against the victim . . . ." A "course of conduct" is "a pattern of conduct composed of a series of 2 or more separate noncontinuous acts evidencing a continuity of purpose." MCL 750.411i(1)(a). Further, MCL 750.411i(1)(f) defines "unconsented contact" as

> any contact with another individual that is initiated or continued without that individual's consent . . . . Unconsented contact includes, but is not limited to, any of the following:
>
> * * *
>
> (*iii*) Appearing at that individual's workplace or residence.
>
> * * *
>
> (*v*) Contacting that individual by telephone.

Defendant raises two arguments challenging the sufficiency of the evidence with respect to his aggravated stalking conviction. First, he argues that the evidence was insufficient to prove that he committed any act of unconsented contact with Deputy Randall because he "did not contact Deputy Randall at all." However, the statute does not require *direct* contact with another individual. Instead, when defining unconsented contact, the statute uses the phrase "*any* contact with another individual," MCL 750.411i(1)(f) (emphasis added), and provides a nonexhaustive list

of examples, *id*. The plain meaning of "any contact with another individual" encompasses both direct and indirect contact, as the term "any" connotes a lack of restriction on the type of contact. Indeed, the examples provided in the statute include "[a]ppearing at that individuals' workplace or residence," MCL 750.411i(1)(f)(iii), and "placing an object on, or delivering an object to, property owned, leased, or occupied by that individual," MCL 750.411i(1)(f)(vii). Neither of these examples require that the victim be physically or immediately present when the contact is made. Thus, the Legislature did not intend to require that the individual be present or aware of the contact at the time it occurs for unconsented contact to occur. This makes sense, as the stalking statute is concerned with whether a course of conduct is intended to harass another individual, see MCL 750.411i(1)(e), not with whether the contact that effectuates that harassment is directed toward the intended individual in a particular way. See MCL 750.411i(1)(d) (defining harassment as conduct "directed toward a victim that includes, but is not limited to, repeated or continuing unconsented contact"); MCL 750.411i(1)(f) (providing a nonexhaustive list of examples of "unconsented contact").

Here, the contact at issue is telephone calls to third parties. While "contacting that individual by telephone," MCL 750.411i(1)(f), one type of "unconsented contact," would ordinarily be taken to mean a communication by phone that reaches the individual directly, the statute's ambit—"any contact"—is not so narrow. Contacting an individual indirectly through others by phone accords with the analysis above. It follows that Deputy Randall need not have picked up the phone himself for defendant to have committed harassment.

A rational jury could find that the apparent intent behind defendant's threatening phone calls was to have his threats passed along to Deputy Randall because defendant made the threatening phone calls to the courthouse, the city manager, and the 911 dispatcher, all of whom were likely to communicate with Deputy Randall. Notably, defendant's call to 911 even directed the dispatcher to "tell him," almost certainly referring to Deputy Randall, about how defendant was tired of being harassed and about defendant's threat to use violence if he was harassed further. The record also reflects that defendant's threats were, in fact, communicated to Deputy Randall. Therefore, a rational jury could find that the phone calls constituted harassment of Deputy Randall because defendant's threats in the phone calls were directed toward Deputy Randall such that defendant was harassing the deputy through those intermediaries. Although Deputy Randall worked for the Kalamazoo County Sheriff's Office and not the court, the city, or the 911 dispatching station, each of those entities were closely related to Deputy Randall's duties as a law enforcement officer, and defendant's act of contacting the deputy by calling those locations is similar in nature to and fits logically with the other examples listed in MCL 750.411i(1)(f)(*i*)-(*vii*).

Defendant's second sufficiency argument with respect to aggravated stalking is that the three phone calls he made cannot be considered "separate noncontinuous" acts, MCL 750.411i(1)(a), because defendant made the calls all within about one hour and because Deputy Randall learned about all the threatening messages at one time. "The statute does not define the words 'separate' or 'noncontinuous.' " *Pobursky v Gee*, 249 Mich App 44, 47; 640 NW2d 597 (2001). Interpreting those words in the stalking statutes, this Court has said:

> The word "separate," used as an adjective, means "detached; distinct." *Random House Webster's New College Dictionary* (1997). The word "noncontinuous" is a common compound word formed with non- that does not have a special meaning;

it is to be understood as not continuous. *Webster's New Twentieth Century Dictionary of the English Language: Unabridged Edition* (2d ed., 1979). The word "continuous" is variously defined as "joined without intervening space; without cessation or interruption; unbroken; constant; connected," *id.*, or "uninterrupted in time; without cessation" or "being in immediate connection or spatial relationship." *Random House Webster's New College Dictionary* (1997). Thus, two or more separate noncontinuous acts are acts distinct from one another that are not connected in time and space. [*Id.*]

Here, defendant made the first phone call, to 911, at 6:48 a.m.; another phone call, to the city manager's office, sometime before 8:00 a.m.; and a third phone call, to the courthouse, at 8:05 a.m. Despite the fact that the overall period from the first call to the last call was only just over one hour, when viewed in the light most favorable to the prosecution, a rational jury could find beyond a reasonable doubt that the calls were separate and noncontinuous because of the gap in time between each call and because the calls were each made to a different recipient. The evidence reflects that at least several minutes passed between each call, such that they were not " 'uninterrupted in time; without cessation' "; that is, they were noncontinuous. *Id.*, quoting *Random House Webster's New College Dictionary* (1997). And each call was made to a different, or " 'distinct,' " recipient, such that they were separate acts. *Pobursky*, 249 Mich App at 47, quoting *Random House Webster's New College Dictionary* (1997). Finally, defendant's "continuity of purpose," MCL 750.411i(1)(a), threatening Deputy Randall into leaving him alone, is evident.

Relatedly, we are unpersuaded by defendant's argument that sufficient evidence is lacking because Deputy Randall only learned about the calls at one time. Although the statute does not expressly state that it matters when a victim learn about a defendant's acts, at oral argument defense counsel focused on the language in the statute which states that " '[h]arassment' means conduct directed toward a victim that includes, but is not limited to*, repeated or continuing unconsented contact* that would cause a reasonable individual to suffer emotional distress and that actually causes the victim to suffer emotional distress," MCL 750.411i(1)(d) (emphasis added), and that stalking requires "*repeated or continuing* harassment of another individual," MCL 750.411i(1)(e) (emphasis added).

As indicated, the restrictive clause "that would cause . . . emotional distress" is preceded by the phrase "repeated or continuing unconsented contact." MCL 750.411i(1)(d). Defendant's interpretation effectively splits the preceding phrase in half—removing "repeated or continuing" such that "unconsented contact" is the sole modified phrase. That is, defendant reads the statute to require proof that each individual instance of "unconsented contact" must, by itself and separately, "cause . . . emotional distress." Together with the definition of stalking, which requires "repeated or continuing harassment," MCL 750.411i(1)(e), defendant suggests that at least two instances of harassment are required, with an accompanying requirement that each instance of "unconsented contact" cause a separate instance of emotional distress. Therefore, defendant argues, the evidence is insufficient because Deputy Randall experienced only one instance of emotional distress when he received the report of the multiple phone calls.

Although defendant does not develop this argument in his brief, implicitly he is invoking a version of the "last antecedent" rule of statutory interpretation. That rule "provides that a modifying or restrictive word or clause contained in a statute is confined solely to the immediately preceding clause or last antecedent, unless something in the statute requires a different interpretation." *Duffy v Mich Dep't of Natural Resources*, 490 Mich 198, 221; 805 NW2d 399 (2011) (citation and quotation marks omitted). The "last antecedent" of a given term or phrase is "the last word, phrase, or clause that can be made an antecedent without impairing the meaning of the sentence." *In re AGD*, 327 Mich App 332, 345; 933 NW2d 751 (2019) (citation, quotation marks, and ellipses omitted). The first question, then, is what the last antecedent of the restrictive "that" clause is—simply "unconsented contact," or "repeated and continuing unconsented contact." "Unconsented contact" is the last word, phrase or clause that can be made an antecedent of the modifying phrase "that would cause . . . emotional distress," without impairing the meaning of the sentence. See *id.* This would tend to support defendant's argument that emotional distress must be experienced repeatedly.

However, the next question is whether "something in the statute requires a different interpretation." *Duffy*, 490 Mich at 221. Reading the statute as a whole, we conclude that the better reading of the statute is that "repeated and continuing unconsented contact"—as a unit— must "cause . . . emotional distress." See MCL 750.411i(1)(d). Such a reading accords with the text and purpose of the statute. Stalking is defined as a course of conduct: "[A] pattern of conduct composed of a series of 2 or more separate noncontinuous acts evidencing a continuity of purpose." MCL 411i(1)(a), (1)(e). Indeed, one instance of a person engaging in a prohibited act—one "unit of harassment," to borrow defense counsel's parlance from oral argument—is not enough to support a conviction. Instead, the statute is concerned with the impact of a combination of multiple acts intended to cause a reasonable person to feel frightened, intimidated, or harassed. See MCL 750.411i(1)(e). Put differently, the threshold for criminalization is not met unless a defendant engages in more than one act. It therefore follows that the statute focuses on the impact of the course of conduct as a whole on the complainant's emotional state. Taking a segmented view of a complainant's emotional distress—which would require the prosecutor to prove that each instance of unconsented contact standing on its own causes emotional distress—fails to account for the statute's penalization of the combination of multiple acts of unconsented contact making up a course of conduct. Accordingly, because there is evidence that Deputy Randall suffered emotional distress when he was notified that multiple incidents of unconsented contact had occurred in the form of phone calls, sufficient evidence supported the conviction.

### 2. MAKING A TERRORIST THREAT

The Michigan Anti-Terrorism Act, MCL 750.543a *et seq.*, prohibits making a terrorist threat in MCL 750.543m, and provides, in relevant part, as follows:

> (1) A person is guilty of making a terrorist threat or of making a false report of terrorism if the person does either of the following:
>
> (a) Threatens to commit an act of terrorism and communicates the threat to any other person.

-6-

The term "threat" in MCL 750.543m refers only to "true threats." *People v Gerhard*, 337 Mich App 680, 687; 976 NW2d 907 (2021). "A true threat 'encompass[es] those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals.' " *Id*., quoting *Virginia v Black*, 538 US 343, 359; 123 S Ct 1536; 155 L Ed 2d 535 (2003) (alteration in original).

MCL 750.543b defines the term "act of terrorism" as follows:

(a) "Act of terrorism" means a willful and deliberate act that is all of the following:

(*i*) An act that would be a violent felony under the laws of this state, whether or not committed in this state.

(*ii*) An act that the person knows or has reason to know is dangerous to human life.

(*iii*) An act that is intended to intimidate or coerce a civilian population or influence or affect the conduct of government or a unit of government through intimidation or coercion.

An act is "dangerous to human life" if it "causes a substantial likelihood of death or serious injury . . . ." MCL 750.543b(b). A "violent felony" is "a felony in which an element is the use, attempted use, or threatened use of physical force against an individual . . . ." MCL 750.543b(h).

Defendant does not contest that he willfully made a true threat to commit a violent felony under the laws of this state—homicide—which he communicated to another person when he made the telephone calls threatening to shoot Deputy Randall and other police officers. Nor does defendant contest that he knew or had reason to know that that act would be dangerous to human life. "Clearly, shooting someone would be a violent felony under the laws of Michigan, and such conduct was no doubt known to defendant to be dangerous to human life." *People v Byczek*, 337 Mich App 173, 189; 976 NW2d 7 (2021). But defendant argues that his threatened act was not "intended to intimidate or coerce a civilian population or influence or affect the conduct of government or a unit of government through intimidation or coercion" within the meaning of MCL 750.543b(a)(*iii*). Rather, defendant argues, in the face of what he perceived to be continuing harassment by the police, "he communicated a threat to commit an act of imperfect self-defense."

"[B]ecause it can be difficult to prove a defendant's state of mind on issues such as knowledge and intent, minimal circumstantial evidence will suffice to establish the defendant's state of mind . . . ." *People v Kanaan*, 278 Mich App 594, 622; 751 NW2d 57 (2008). In his conversations with 911 dispatch, defendant stated that he had been harassed by every police officer in Galesburg for several years. Although defendant identified Deputy Randall specifically, defendant threatened to shoot and kill "one by one" any police officer who harassed him. Defendant also stated that he was sick of being told that he could not be in the park, and being told what he could or could not do. Viewing the evidence in the light most favorable to the prosecution, a rational jury could infer that the intent of defendant's threatened act was to intimidate or coerce the police in general, and Deputy Randall specifically, into allowing defendant to be in the park or

otherwise stop enforcing the law against defendant. It is the jury's role, not ours, "to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *Oros*, 502 Mich at 239 (quotation marks and citation omitted). Therefore, we must reject defendant's argument that the evidence was insufficient to convict him of making a terrorist threat.

## B. JURY INSTRUCTIONS

Defendant next argues that the trial court improperly instructed the jury as to what constituted "unconsented contact" with Deputy Randall under the aggravated stalking statute. We disagree.

We review de novo claims of error regarding jury instructions. *People v Spaulding*, 332 Mich App 638, 652; 957 NW2d 843 (2020). We review for an abuse of discretion the trial court's determination that an instruction applies to the facts of the case. *People v Dobek*, 274 Mich App 58, 82; 732 NW2d 546 (2007). The trial court abuses its discretion when its decision "falls outside the range of reasonable and principled outcomes" or when the court "makes an error of law." *People v Christian*, 510 Mich 52, 75; 987 NW2d 29 (2022) (quotation marks and citation omitted).

"A defendant has the right to a properly instructed jury . . . ." *Spaulding*, 332 Mich App at 653 (quotation marks and citations omitted; ellipsis in original). The trial court is required to instruct the jury on the applicable law fully, fairly, and in an understandable manner. *Id*. "Jury instructions are reviewed in their entirety to determine if there is error requiring reversal." *Id*. (quotation marks and citation omitted). "[E]ven if somewhat imperfect, instructions do not create error if they fairly presented the issues for trial and sufficiently protected the defendant's rights." *Id*. (quotation marks and citation omitted). "The defendant bears the burden of establishing that the asserted instructional error resulted in a miscarriage of justice." *People v Dupree*, 486 Mich 693, 702; 788 NW2d 399 (2010), citing MCL 769.26. An error results in a miscarriage of justice when the defendant can show that, but for the error, it is more probable than not that the outcome would have been different. *People v Lukity*, 460 Mich 484, 495; 596 NW2d 607 (1999).

As discussed, "stalking" "means a willful course of conduct involving repeated or continuing harassment of another individual . . . ." MCL 750.411i(1)(e). And "harassment" "means conduct directed toward a victim that includes, but is not limited to, repeated or continuing unconsented contact . . . ." MCL 750.411i(1)(d). The trial court read the jury M Crim JI 17.25, the model jury instruction regarding aggravated stalking, and instructed the jury, in relevant part, as follows:

> In count two, the defendant is charged with aggravated stalking. To establish this charge, the prosecutor must prove each of the following elements beyond a reasonable doubt.
>
> First, that the defendant committed two or more willful, separate and non-continuous acts of unconsented contact with Timothy Randall. Unconsented contact means the defendant initiated or continued contact with Timothy Randall without his consent directly and/or by sending messages for Timothy Randall through other individuals.

-8-

Defendant argues that the trial court erred by instructing the jury that unconsented contact included "sending messages for Timothy Randall through other individuals." As previously discussed, MCL 750.411i(1)(f) defines "unconsented contact" as

> any contact with another individual that is initiated or continued without that individual's consent . . . . Unconsented contact includes, but is not limited to, any of the following:

> \* \* \*

> (*iii*) Appearing at that individual's workplace or residence.

> \* \* \*

> (*v*) Contacting that individual by telephone.

Further, Use Note 1 of M Crim JI 17.25 provides as follows:

> *Unconsented contact* is defined at MCL 750.411h(1)(f) and is not limited to the forms of conduct described in this jury instruction. The court may read all of the types of contact mentioned in the statute or may select those that apply according to the charge and the evidence, or the court may describe similar conduct it finds is included under the purview of the statute.

Moreover, a trial court may "give additional instructions on applicable law not covered by the model instructions. Additional instructions, when given, must be patterned as nearly as practicable after the style of the model instructions and must be concise, understandable, conversational, unslanted, and nonargumentative." MCR 2.512(D)(4).

In this case, the trial court recognized that the examples of "unconsented contact" provided in MCL 750.411i(1)(f) included conduct that did not necessarily include direct contact with the individual, such as appearing at the individual's residence or workplace. As discussed above, this is an appropriate reading of the statute. A jury could find that by calling 911, the courthouse, and the city manager, defendant was trying to contact Deputy Randall through his work as a law enforcement officer, in a manner like appearing at or calling someone's workplace. The record further reflects that defendant intended for Deputy Randall to learn about his threats to kill him if he did not stop harassing defendant. Defendant even directed the 911 operator to "tell him" about the threats. Each of the recipients of defendant's telephone calls was connected in some way to Deputy Randall's work as a law enforcement officer. On these facts, we find no error in the trial court's determination that defendant could make unconsented contact with Deputy Randall by sending threatening messages intended for him through these third parties. Defendant's phone calls were similar in nature and their intended effect as other examples of unconsented contact provided in the statute. Likewise, the trial court did not abuse its discretion by determining that that instruction was applicable to the facts of the case.

Accordingly, we conclude that the trial court did not err by instructing the jury that defendant's phone calls could constitute unconsented contact with Deputy Randall.

## C. PRIOR BAD-ACTS EVIDENCE

Next, defendant argues that the trial court erred by allowing Deputy Randall to testify that defendant had a criminal history and that Deputy Randall arrested defendant on a warrant because that evidence was irrelevant, unfairly prejudicial, and constituted impermissible character evidence of defendant's other crimes, wrongs, or acts, in violation of MRE 401, MRE 403, and MRE 404(b), respectively.[2]  Again, we disagree.

We review for an abuse of discretion the trial court's decisions to admit or exclude evidence.  *People v Thorpe*, 504 Mich 230, 251; 934 NW2d 693 (2019).  The trial court's decision to admit evidence therefore "will not be disturbed unless that decision falls outside the range of principled outcomes."  *Id.* at 251-252 (quotation marks and citation omitted).  However, we review de novo "[p]reliminary questions of law, such as whether a rule of evidence or statute precludes the admission of particular evidence . . . ."  *People v Bynum*, 496 Mich 610, 623; 852 NW2d 570 (2014).

" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  MRE 401.  Evidence that is relevant is admissible unless prohibited by the United States Constitution, the Michigan Constitution, the Michigan Rules of Evidence, or another rule prescribed by the Michigan Supreme Court.  MRE 402.  Irrelevant evidence is not admissible.  *Id.*

MRE 404(b)(1) governs the admissibility of prior bad-acts evidence and provided, in relevant part, as follows:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

"Relevant other acts evidence does not violate Rule 404(b) unless it is offered solely to show the criminal propensity of an individual to establish that he acted in conformity therewith."  *People v VanderVliet*, 444 Mich 52, 65; 508 NW2d 114 (1993), amended 445 Mich 1205 (1994).  That is to say, "[e]vidence relevant to a noncharacter purpose is *admissible* under MRE 404(b) *even if* it also reflects on a defendant's character."  *People v Mardlin*, 487 Mich 609, 615; 790 NW2d 607 (2010).

---

[2] The Michigan Rules of Evidence were substantially amended on September 20, 2023, effective January 1, 2024.  See ADM File No. 2021-10, 512 Mich lxiii (2023).  We rely on the version of the rules in effect at the time of trial.

Turning to the statutes at hand, a "credible threat" under the aggravated stalking statute is "a threat to kill another individual or a threat to inflict physical injury upon another individual that is made in any manner or in any context that causes the individual hearing or receiving the threat to reasonably fear for his or her safety or the safety of another individual." MCL 750.411i(1)(b). Here, Deputy Randall's knowledge of defendant's criminal history and the fact that Deputy Randall had arrested defendant in the past were relevant to establish the "context" that caused Deputy Randall to reasonably fear for his safety when he learned about defendant's threats against him—that is, to prove that defendant's threats against Deputy Randall were credible. Defendant's threats were premised on defendant's belief that Deputy Randall and other police were continually harassing him. Given that context, it would have been less reasonable for Deputy Randall to fear for his safety if he had learned of threatening phone calls from someone whom he did not personally interact with or whom he did not know to have a criminal history.

Along the same lines, an element of the crime of making a terrorist threat, MCL 750.543m, requires that the intent of defendant's threatened act was "to intimidate or coerce a civilian population or influence or affect the conduct of government or a unit of government through intimidation or coercion," MCL 750.543b(a)(*iii*). The fact that defendant had earlier encounters with the criminal justice system and the police, including Deputy Randall, was relevant to whether defendant's threatened act had the necessary intent to affect the behavior of the police by coercion or intimidation to make his threatened act an "act of terrorism." Furthermore, proof of intent is a permissible use of other-acts evidence under MRE 404(b). We conclude, therefore, that the evidence of defendant's prior bad acts was admissible under MRE 401 and MRE 404(b).

Evidence that is otherwise admissible must still be excluded if the probative value of the evidence is substantially outweighed by a danger of unfair prejudice to the defendant. MRE 403. "Any undue prejudice that arises because the evidence also unavoidably reflects the defendant's character is then considered under the MRE 403 balancing test . . . ." *Mardlin*, 487 Mich at 617. However, a limiting instruction directing the jury to consider such evidence "only for proper, noncharacter purposes pursuant to MRE 105" is "generally suffic[ient] to enable the jury to compartmentalize evidence and consider it only for its proper purpose." *Id*. at 629. "[J]urors are presumed to follow their instructions." *People v Urbanski*, 348 Mich App 90, 104; 17 NW3d 430 (2023). In this case, the trial court read the jury M Crim JI 4.11 that instructed the jury that it was not to consider any evidence of defendant's prior bad acts for an impermissible, character purpose. The jury was instructed to consider defendant's prior bad acts only for whether they proved the relevant elements of the crimes defendant was charged with. We conclude that any prejudicial effect of the evidence that may have otherwise warranted excluding the evidence under MRE 403 was remedied by the trial court's instruction to the jury.

Defendant also argues that the trial court erred by admitting Deputy Randall's testimony about defendant's criminal history and arrest on a warrant without prior notice from the prosecution. See MRE 404(b)(2).[3] Defendant did not raise this issue before the trial court; therefore, it is not preserved. See *Thorpe*, 504 Mich at 252. This Court reviews unpreserved issues for plain error. *People v Beck*, 510 Mich 1, 27; 987 NW2d 1 (2022). "Plain error exists when

---

[3] This notice provision is now provided under MRE 404(b)(3).

-11-

1) an error . . . occurred[;] 2) the error was plain, i.e., clear or obvious[;] 3) and the plain error affected substantial rights." *Id*. (quotation marks and citation omitted; ellipsis in original).

The record shows that the prosecution did not intend to offer Deputy Randall's challenged testimony before trial. MRE 404(b)(2) only required reasonable notice of evidence that the prosecution "intend[ed] to introduce at trial." The testimony that defendant challenges in this appeal came out because Deputy Randall answered questions posed by the jury after the prosecution and defense had finished their questioning. The prosecution only asked follow-up questions in response to Deputy Randall's answers to the jury's questions. Additionally, Deputy Randall's testimony that defendant had a criminal history was not responsive to the prosecution's question. Because the prosecution did not intend before trial to offer the prior bad-acts evidence that defendant challenges, no notice had to be provided before trial under the plain terms of MRE 403(b)(2). We see no plain error in the admission of this evidence under these facts. Accordingly, we conclude that the trial court did not abuse its discretion by admitting evidence of defendant's prior bad acts.

### D. PROSECUTORIAL MISCONDUCT

Next, defendant argues that a new trial is required because the prosecution impermissibly asked the jury to "step into the shoes" of Deputy Randall when deciding the aggravated stalking charge. Here, too, we disagree.

Claims of prosecutorial misconduct are reviewed de novo. *People v McGhee*, 268 Mich App 600, 630; 709 NW2d 595 (2005). However, because defendant did not contemporaneously object at trial and request a curative jury instruction, this issue is not preserved. See *Mullins*, 322 Mich App at 172. We review unpreserved issues for plain error that affected defendant's substantial rights. See *Beck*, 510 Mich at 27. We thus review "the prosecutor's remarks in context to determine whether the defendant was denied a fair and impartial trial." *Mullins*, 322 Mich App at 172 (quotation marks and citation omitted). "The prosecutor's statements are to be evaluated in light of defense arguments and the relationship the comments bear to the evidence admitted at trial." *Id.* (quotation marks and citation omitted).

The prosecution may not appeal to the jury to sympathize with the victim of a crime. *People v Watson*, 245 Mich App 572, 591; 629 NW2d 411 (2001). "The prosecutor commits misconduct when he or she invites jurors to suspend their powers of judgment and decide the case on the basis of sympathy or civic duty." *People v Lane*, 308 Mich App 38, 66; 862 NW2d 446 (2014). Federal courts have similarly recognized that a "Golden Rule" violation occurs when the prosecutor "urges jurors to identify individually with the victims with comments like 'it could have been you' the defendant [harmed] or 'it could have been your children.' " *United States v Al-Maliki*, 787 F3d 784, 795 (CA 6, 2015) (quotation marks and citation omitted).[4] They have also acknowledged that the ban on so-called Golden Rule arguments is violated by "[a]sking the jurors to place themselves in the victim's shoes . . . ." *United States v Hall*, 979 F 3d 1107, 1119 (CA 6,

---

[4] Federal courts of appeals decisions are not binding on our courts but we may find them persuasive. *Abela v General Motors Corp*, 469 Mich 603, 607; 677 NW2d 325 (2004).

2020); see also *Hodge v Hurley*, 426 F 3d 368, 384 (CA 6, 2005). On the other hand, "[p]rosecutors are typically afforded great latitude regarding their arguments and conduct at trial. They are generally free to argue the evidence and all reasonable inferences from the evidence as it relates to their theory of the case." *People v Unger*, 278 Mich App 210, 236; 749 NW2d 272 (2008) (citation omitted).

Defendant takes issue with the following statements from the prosecution's closing argument regarding the second element of aggravated stalking:

> Second, that the contact would cause a reasonable individual to suffer emotional distress. You put yourself in that—the shoes right there. You are all reasonable people that is why you are on a jury. Think you'd have some emotional distress, multiple calls, yelling, threatening your life. I would hope so. Beyond a reasonable doubt.

We agree with defendant that the prosecutor's remarks were improper because they exhorted the jurors to step into the victim's shoes. However, applying the plain-error standard of review to this unpreserved claim of error, we conclude that reversal is not warranted because defendant's substantial rights were not affected. The prosecutor's remarks were made only in closing, were "relatively brief[,] and did not likely deflect the jury's attention from the evidence presented in the case." See *Unger*, 278 Mich App at 237. Further, the trial court instructed the jury at the close of evidence that "[t]he lawyers' statements and arguments are not evidence. They are only meant to help you understand the evidence and each side's legal theories." Any minimal resultant prejudice was cleansed by this instruction, as "jurors are presumed to follow their instructions." *Urbanski*, 348 Mich App at 104. Therefore, defendant has not shown outcome-determinative error.

## E. SENTENCING

Finally, turning to sentencing, defendant argues that the trial court miscalculated his minimum sentencing range under the guidelines by erroneously assessing 10 points for Offense Variable (OV) 4 and 15 points for OV 19. Again, we disagree.

The proper interpretation and application of the sentencing guidelines are questions of law we review de novo. *People v Armstrong*, 305 Mich App 230, 243; 851 NW2d 856 (2014). We review for clear error the trial court's factual findings at sentencing, and a preponderance of the evidence must support the sentencing court's factual findings. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). We will conclude that the trial court's factual determinations are clearly erroneous only if definitely and firmly convinced that the trial court made a mistake. *Armstrong*, 305 Mich App at 242.

Although the statutory sentencing guidelines are only advisory, the trial court is required to score and consider the guidelines when imposing a sentence. *People v Lockridge*, 498 Mich 358, 365; 870 NW2d 502 (2015). To determine a minimum sentencing range under the guidelines, the trial court must determine the offense category of the sentencing offense, determine which OVs are applicable to that category, and then score those OVs. MCL 777.21(1)(a). The trial court

must also score the applicable Prior Record Variables (PRVs) and then, using the total OV and PRV points, determine a minimum sentencing range using the sentencing grid that corresponds to the class of the sentencing offense. MCL 777.21(1)(b)-(c). See also *People v Morson*, 471 Mich 248, 255; 685 NW2d 203 (2004). A defendant is entitled to resentencing when the guidelines are improperly calculated and the error affected the applicable guidelines range. See *People v Francisco*, 474 Mich 82, 89, 92; 711 NW2d 44 (2006).

## A. OV 4

Defendant first argues that the trial court erred by assessing OV 4 at 10 points because a preponderance of the evidence does not show that Deputy Randall suffered a serious psychological injury requiring professional treatment.

Under OV 4, a sentencing court must score 10 points if "[s]erious psychological inury requiring professional treatment occurred to a victim." MCL 777.34(1). Ten points must be scored "if the serious psychological injury *may* require professional treatment. In making this determination, the fact that treatment has not been sought is not conclusive." MCL 777.34(2) (emphasis added). A sentencing court may assess 10 points "if the victim suffers, among other possible psychological effects, personality changes, anger, fright, or feelings of being hurt, unsafe, or violated." *Armstrong*, 305 Mich App at 247. However, a victim's fear during the crime, without other evidence of psychological harm, is not enough to assess 10 points for OV 4. *People v White*, 501 Mich 160, 164-165; 905 NW2d 228 (2017). The trial court can also not "merely assume that a victim has suffered a 'serious psychological injury' solely because of the characteristics of the crime." *Id*. at 165.

In this case, the trial court scored OV 4 at 10 points largely because of the statements in Deputy Randall's victim-impact statement that he felt that he had to be on "high alert" for his own safety and the safety of his family because of defendant's threats. Deputy Randall also said, "I have had many sleepless nights, and [I am] very stressed over these threats, not knowing when [defendant] will strike." Deputy Randall stated that his fear of defendant would continue even after defendant was released from jail or prison. Lastly, Deputy Randall said that the stress he felt was so great that he had to retire from his career in law enforcement. Deputy Randall had not received any professional treatment, but that is not a requirement. See MCL 777.34(2).

Even though defendant challenges the credibility of Deputy Randall's account of his symptoms, on these facts, we cannot conclude that the trial court clearly erred by finding that Deputy Randall suffered a serious psychological injury that may have required professional treatment and accordingly assessing OV 4 at 10 points.

## B. OV 19

Defendant also argues that the trial court erred by assessing OV 19 at 15 points because there was no ongoing administration of justice that defendant could have interfered with when he made the threatening phone calls.

Under MCL 777.49(b), OV 19 is properly scored at 15 points when "[t]he offender used force or the threat of force against another person or the property of another person to interfere

with, attempt to interfere with, or that results in the interference with the administration of justice or the rendering of emergency services[.]" "[T]he plain and ordinary meaning of 'interfere with the administration of justice' for purposes of OV 19 is to oppose so as to hamper, hinder, or obstruct the act or process of administering judgment of individuals or causes by judicial process." *People v Hershey*, 303 Mich App 330, 343; 844 NW2d 127 (2013).

Defendant's presentence investigation report shows that defendant was charged with trespassing on July 12, 2021. Defendant was arrested by the Kalamazoo County Sheriff's Office on that charge on July 26, 2021 and released on bond that day. Two days later, on July 28, 2021, defendant placed the threatening phone calls in this case. Defendant's trespassing charge was not resolved until August 31, 2021. At sentencing, arguing that defendant interfered with the administration of justice, the prosecution said, "[Defendant] was not going to allow the officers to keep issuing or enforcing the trespass order for the park that he was found in." Defendant's first phone call specifically mentioned that he was being told that he could not be in the park.

Under these facts, a preponderance of the evidence supports the trial court's finding that defendant attempted to interfere with the administration of justice in his then-ongoing trespassing case by making a terrorist threat when he placed the phone calls threatening to shoot Deputy Randall or other police officers that continued to "harass" him. Accordingly, the trial court did not err by assessing OV 19 at 15 points. Because the trial court did not err by assessing either OV 4 or OV 19, defendant is not entitled to resentencing.

Affirmed.

/s/ Michelle M. Rick
/s/ Allie Greenleaf Maldonado
/s/ Daniel S. Korobkin

-15-